## DAVE THOMAS v. THE STATE.

### No. 2531.   Decided April 22, 1903.

**1.—Mistake in Charge Stating Offense.**

The indictment contained three counts, two for theft and the third for embezzlement. The trial was on the third count, for embezzlement, and the charge of the court related entirely to embezzlement; but, through mistake, the charge stated the offense as "burglary" instead of "embezzlement." Held, the mistake did not constitute reversible error, as it was not calculated to injuriously affect defendant.

**2.—Embezzlement—Principal—Charge—Accessory.**

Although the law makes the act of embezzlement depend upon agency, yet one who is not an agent can become a principal in the crime, who is present, by aiding and encouraging the principal to commit the embezzlement; and the fact that such party afterwards received a portion of the money embezzled did not require of the court a charge as to the law pertaining to accessories.

**3.—Accomplice Testimony—Charge.**

Where the court submits to the jury the question as to whether a witness is an accomplice, it is error to fail to instruct the jury as to what constitutes an accomplice.

Appeal from the Criminal District Court of Dallas. Tried below before Hon. E. B. Muse.

Appeal from a conviction of embezzlement; penalty, seven years imprisonment in the penitentiary.

The indictment charged appellant with the embezzlement of $80, the property of Henry Williams.

Lonnie Henderson testified: "I saw the old man Henry Williams and the defendant, Dave Thomas, on the night of December 8, 1902, at the 'Big 4.' I went with them from the 'Big 4' to the 'Crooked Shack.' On the way to the 'Crooked Shack' defendant told old man Williams to

45 Crim.—6.

let's go to the 'Crooked Shack.' On the way down there to the 'Crooked Shack' Dave Thomas put his arms around the old man and tried to get his money, and I told him to let the old man's money alone; he said he wasn't bothering his money, but just keeping the old man from falling; and the old man told him he could take care of himself and didn't need his help, and to take his arms from around him. When we got over to the 'Crooked Shack,' Dave Thomas said to Ben Feinstein, behind the bar, 'The old man is a friend of mine; he was over at the "Big 4;" he has some money and I brought him over here because I was afraid somebody would rob him [the old man Henry Williams] if I left him over there.' The old man Henry Williams got a drink and took out his pocketbook and passed it over the counter or bar to Ben and told him to keep it for him until in the morning; and the defendant then said, 'Keep it for him; he is a friend of mine.' Ben took the pocketbook and put it in the drawer. In just a short time the old man Henry Williams fell down on the floor, and they drug him out of the saloon into a back room. Ben then took the pocketbook out of the drawer and held it under the counter and held up three bills, they looked like five-dollar bills to me, and four nickels. I don't know whether that was all the money in the pocketbook or not, or whether they were five-dollar bills or not; he then put the money back in the pocketbook and put the pocketbook back in the drawer. I was there the next morning when the old man Henry Williams came in the saloon and asked about his money and his hat. There were present in the saloon at that time Joe Aronoff, Ben Feinstein, Dave Thomas and Bud Gibson. The old man asked for his money that he had left there the night before, and Joe and Ben and defendant said he did not leave any money there last night, and that he was not there last night. They laughed at him and told him he had been drunk; and defendant told him he had not been there and had left no money there; that he must have been touched somewhere else. After the old man left, Joe Aronoff took Dave Thomas in a back room and gave him some money. I don't know how much. Dave Thomas then came out and gave me $1, and told me to say nothing about this. Joe Aronoff gave me 50 cents and told me to leave town. I saw the policeman there in the storeroom that night, but I didn't know he was a policeman; he had on a cap and a blue coat and brass buttons. I thought he was a showman. I had never been to a big town before and had never seen a policeman. I came from Henderson, in Rusk County, and had not been in town long."

No further statement is necessary.

*Richardson & Seay,* for appellant.—If the question of accomplice is submitted to the jury, it must be under a clear instruction of the court as to what constitutes an accomplice. Zollicoffer v. State, 16 Texas Crim. App., 312.

*Howard Martin,* Assistant Attorney-General for the State.—Defend-

ant's second assignment complains of the court's failure to give a definition of accessories and the law applicable to accessories. In this the court did not err, as the facts did not call for such a charge. Appellant was convicted on the theory of being a principal in the crime and not an accomplice or accessory. Mason v. State, 32 Texas Crim. Rep., 95; Kirby v. State, 23 Texas Crim. App.; Cook v. State, 14 Texas Crim. App., 96; McFadden v. State, 28 Texas Crim. App., 241; Stevenson v. State, 17 Texas Crim. App., 618; O'Neal v. State, 14 Texas Crim. App., 583.

HENDERSON, JUDGE.—Appellant was convicted of embezzlement, and his punishment assessed at imprisonment in the penitentiary for a term of seven years; hence this appeal.

The only assignments relate to the charge of the court. It appears that the court told the jury that defendant was on trial for the offense of "burglary," whereas the indictment only charged in the first two counts theft, and embezzlement in the third count; there being no burglary in the case. This was evidently a mistake on the part of the trial judge, as nothing further is said in the charge in regard to burglary, but the charge relates entirely to embezzlement—the trial being on the third count of the indictment. While this mistake should not have occurred, still it does not appear to us that it was of a character calculated to injuriously affect appellant.

Nor do we believe the court was required to give a charge on the subject of accessories. True, some of the proof against appellant showed that appellant received, or was paid, money by the agent of the prosecutor, the next morning after the money had been intrusted to such agent; yet this is but one of a number of circumstances tending to show appellant's guilt of the offense of embezzlement. It is not pretended that appellant was the agent of prosecutor, as he was not intrusted with the $80, or any part thereof, by prosecutor, Williams; the proof showing that the money was delivered by Williams to Ben Feinstein. But the proof shows appellant was present at the time and his acts and conduct show that he was aiding and encouraging prosecutor to intrust his money with said Feinstein, as his agent. Although the law makes the act of embezzlement depend on the question of agency, yet one who is not an agent can become a principal in the act of embezzlement by aiding and encouraging the agent to commit the embezzlement. As stated, we think appellant's acts and conduct show that he rendered such aid.

Appellant complains that Lonnie Henderson, who was a witness against him, was unquestionably an accomplice, and that the court should have instructed the jury to that effect; but instead of doing so the court submitted to the jury, in its charge, the question as to whether or not said Lonnie Henderson was an accomplice, utterly failing to define to the jury what constituted an accomplice. In this we think the court erred. Said Henderson was an important witness against appellant, and when the court submitted to the jury to determine whether or not

said witness was an accomplice, he should have also instructed them what an accomplice was. The judgment is accordingly reversed and the cause remended.

*Reversed and remanded.*