## COMMISSIONER OF INTERNAL REVENUE v. GREENE.

No. 9619.

Circuit Court of Appeals, Ninth Circuit.

April 21, 1941.

Rehearing Denied May 23, 1941.

STEPHENS, Circuit Judge, dissenting.

———◆———

Rehearing denied; STEPHENS, Circuit Judge, dissenting.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, John A. Gage, and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., for petitioner.

J. M. Mannon, Jr., John W. Parker, and Morris M. Doyle, all of San Francisco, Cal., for respondent.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

The Commissioner of Internal Revenue petitions us to review decisions of the Board of Tax Appeals that there were no deficiencies in the taxpayer's gift tax for the years 1936 and 1937.

Alice H. Lester and W. E. Lester were married more than forty years ago. As a result of the marriage two daughters, Carolyn and Beatrice, were born. The former is now about 47 years old, and the latter about 43. More than 30 years ago Alice H. Lester became incompetent and ever since has been and is now confined in an institution for insane persons. Prior thereto, the husband, wife and two daughters lived together as a family unit in luxury and in the manner of people of wealth. After the incompetency of the wife, the husband and two daughters lived together as a family unit until the marriage of Carolyn, and thereafter, the husband and Beatrice continued to live as a family unit until the marriage of Beatrice. Carolyn first married one Hamilton, and in 1930 married Thomas J. Loan who is now her husband. Beatrice in 1932 married one Pauli from whom she was divorced in 1938 and has since been unmarried.

The husband of Alice H. Lester died on May 29, 1933, and left an estate appraised at about $38,000 which was distributed in equal shares to the two daughters and the estate of the incompetent.

The incompetent has always been a person of large financial means. For example, the income from the principal of her estate which is in excess of $2,000,000 was: for 1932—$121,931; for 1933—$91,473.85; for 1934—$88,385.74; for 1935—$68,468.91; for 1936—$109,673.53; and for 1937—$142,-614.13.

Loan has never contributed to the support of Carolyn, and Pauli has never contributed to the support of Beatrice. Both daughters were from birth accustomed to a life of ease and luxury, and neither of them was trained for any gainful occupation and neither of them was during any of said times able to engage in any gainful oc-

cupation. Since the incompetency of their mother, the only means of support available to them has been the incompetent's estate. Except to the extent of their interest, if any, in the incompetent's estate, the payments received therefrom, and the distributions received from their father's estate, both daughters have been at all times since prior to June 6, 1932, poor persons unable to maintain themselves by work.

From time to time since the inception of the incompetency of the mother, the proper state court has made orders directing the payment of money from the estate to the husband and the two daughters. Prior to the calendar year 1937, such court refused to direct payments except for the maintenance and support of the father and daughters. The amounts ordered to be paid were liberal. Such payments were apparently made pursuant to the following provisions of the California Civil Code and Probate Code, respectively:

"§ 206. * * * It is the duty of the father, the mother, and the children of any poor person who is unable to maintain himself by work, to maintain such person to the extent of their ability. * * *"

"§ 1502. * * * Every guardian of an estate must manage it frugally and without waste, and apply the income, as far as may be necessary, to the comfortable and suitable support, maintenance and education of the ward and his family, if any * * *."

On October 19, 1937, the state court ordered that additional payments be made to the two daughters pursuant to Calif. Probate Code, § 1558, as follows: "* * * On the application of the guardian of next of kin of an insane or incompetent person, the court may direct the guardian to pay and distribute surplus income, not used for the support and maintenance of the ward, or any part of such surplus income, to the next of kin whom the ward would, in the judgment of the court, have aided, if said ward had been of sound mind. The granting of such allowance and the amounts and proportions thereof shall be discretionary with the court, but the court shall give consideration to the amount of surplus income available after due provision has been made for the proper support and maintenance of the ward, to the circumstances and condition of life to which the ward and said next of kin have been accustomed and to the amount which the ward would, in the judgment of the court, have allowed said

next of kin, had said ward been of sound mind. * * *"

In the order the court directed that $7,500 be paid to each daughter and found: "That in the judgment of the court, due consideration being given to the amount of said surplus income, the circumstances and condition of life to which said ward and her said children have been accustomed, said ward, if she were of sound mind, would aid said children and would pay and distribute to her said children the portion of he [the] said surplus income which is hereinafter directed to be so distributed."

The $7,500 was in addition to the amounts ordered to be paid for maintenance of the daughters.

The orders of the state court contained findings that the daughters were unable to maintain themselves by work; that the payments were necessary for the comfortable and suitable support and maintenance of the daughters as members of the ward's family; and that in the court's judgment, the incompetent would, had she been of sound mind, have aided the daughters by the payments in question. The amounts paid to the daughters were as follows:

| Year | To Carolyn | To Beatrice |
| --- | --- | --- |
| 1932 | $7,392.83 | $5,000.00 |
| 1933 | 9,816.49 | 9,607.70 |
| 1934 | 11,000.00 | 11,000.00 |
| 1935 | 16,844.91 | 14,362.91 |
| 1936 | 21,000.00 | 21,000.00 |
| 1937 | 20,000.00 | 20,000.00 |

All such amounts were surplus income not used for the support and maintenance of the incompetent.

The Commission determined that the payments were gifts and assessed deficiencies in the gift taxes for 1936 and 1937. Respondent petitioned the Board for a redetermination of the deficiencies. The Board entered decisions that there were no deficiencies, and the Commissioner seeks review of those decisions.

Section 501 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 580, provides in part: "(a) For the calendar year 1932 and each calendar year thereafter a tax, computed as provided in section 502, shall be imposed upon the transfer during such calendar year by any individual * * * of property by gift."

Section 503, 26 U.S.C.A. Int.Rev.Acts, page 585, provides: "Where property is

transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this title, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year."

A majority of the Board held that all payments made to the daughters for maintenance and support were in satisfaction of an obligation imposed by law (Calif. Civil Code § 206; Calif. Probate Code § 1502) and were therefore not to be classed as gifts; that the $7,500 payments in 1937 were taxable as gifts. One member of the Board dissented without opinion. Three members dissented on the ground that under § 503 of the Revenue Act of 1932, all payments were gifts. Two members dissented on the ground that § 206, Calif. Civil Code only required the parent to supply reasonable necessities, and that the maintenance supplied was "beyond ordinary necessities".

Respondent's argument is that Calif. Probate Code, § 1502, and Calif. Civil Code, § 206, impose obligations upon the incompetent's estate to support the daughters; that the state court's orders were binding on that question; and that the payments were made without donative intent and were not, therefore, gifts. Respondent's argument is based on the theory that state law is applicable. The first question to be decided is whether the state law is applicable.

The rule is that "State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law". Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199; see, also, Thomas v. Perkins, 301 U.S. 655, 659, 57 S.Ct. 911, 81 L.Ed. 1324; Biddle v. Commissioner, 302 U.S. 573, 578, 58 S.Ct. 379, 82 L.Ed. 431; Lyeth v. Hoey, 305 U.S. 188, 194, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410; Morgan v. Commissioner, 309 U.S. 78, 80, 81, 60 S.Ct. 424, 84 L.Ed. 585.

Since the argument of this case, United States v. Pelzer, 61 S.Ct. 659, 660, 85 L.Ed. ——, March 3, 1941, was decided. That case considered § 504(b) of the act in question, which provides for an exclusion of $5,000 in "the case of gifts [other than of future interests in property]". In the last cited case the taxpayer argued that since the statute did not define "future interests" they must be taken to be future interests as defined by the local law. The court said: "* * * But as we have often had occasion to point out, the revenue laws are to be construed in the light of their general purpose to establish a nationwide scheme of taxation uniform in its application. Hence their provisions are not to be taken as subject to state control or limitation unless the language or necessary implication of the section involved makes its application dependent on state law. * * *"

Here, property, i. e., money,[1] was transferred, and pursuant to § 503, the amount of the gift is "the amount by which the value of the property exceeded the value of the consideration". The only thing in question here is the "consideration". Nothing in the act expressly states that the existence of consideration is to be determined by state law. There is no more reason for saying here that Congress meant consideration as defined by state law, than there was for saying that Congress meant "future interests" as defined by state law.

The committee reports state that the tax imposed by the act "is designed to reach all transfers to the extent that they are donative, and to exclude any consideration not reducible to money or money's worth. * * *" See Committee Reports on the Revenue Acts, Cum.Bull.1939-1 (Part 2), pp. 478, 526. Art. 1 of Treasury Regulations 79, promulgated under the act in question provides that the "tax is not limited in its imposition to transfers of property without a valuable consideration, which at common law are treated as gifts * * *" Art. 8 of such regulations provides in part: "Transfers reached by the statute are not confined to those only which, being without a valuable consideration, accord with the common law concept of gifts. * * * A consideration not reducible to a money value, as love and affection, promise of marriage, etc., is to be wholly disregarded, and the entire value of the property transferred constitutes the amount of the gift."

It is thus apparent that there is nothing to indicate that local law was to determine what might be consideration, but, on the contrary, the taxing act considered certain

[1] See Committee Reports on the Revenue Acts, Cum.Bull.1939-1 (Part 2) pp. 478, 526.

transfers as gifts, whether local law so considered them or not. Since local law is not controlling, it is immaterial what local statutes said, or local courts held.

Respondent cites and relies on Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L. Ed. 634; Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Botchford v. Commissioner, 9 Cir., 81 F.2d 914, 110 A.L. R. 281; Letts v. Commissioner, 9 Cir., 84 F. 2d 760; and United States v. Merchants Nat. Trust & Savings Bank, 9 Cir., 101 F.2d 399. None of such cases involve the gift tax act, and are, therefore, not in point.

■ Respondent's contention that there was no donative intention is immaterial, because § 503 of the act in question does not require it.

The Board's decisions are reversed and the cause is remanded to the Board for further proceedings in accordance with the views herein expressed.

STEPHENS, Circuit Judge.

I dissent.

The majority opinion holds that all moneys paid out of the incompetent's estate for the support of her adult married daughters are "gifts" and taxable as such, and holds as immaterial the legal fact that the California Code imposed a legal duty upon her to support her indigent children. This is based upon the theory that "State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law", citing the recent case of United States v. Pelzer, 61 S.Ct. 659, 85 L.Ed. ——, March 3, 1941.

I do not read the Pelzer case as authority for the proposition that we are not bound by the State law in the instant case. There the question involved was whether or not the gift under consideration was a gift of a "future interest". It was argued by the ·taxpayer that the Federal courts were bound by the State law defining what constituted a "future interest". The Supreme Court looked to the committee reports and determined that the purpose of the statute was to make taxable gifts "whether vested or contingent, limited to commence in possession or enjoyment at a future date", and that this was what was meant by the words "future interest" in the taxing statute. The Regulations had defined "future interest" in the same terms. The Court merely held that the provisions of the taxing statute were not subject to state control in this respect.

In the instant case the committee reports state that the tax imposed by the Act "is designed to reach all transfers to the extent that they are donative, and to exclude any consideration not reducible to money or money's worth * *". The Regulations promulgated under the Act provide that the tax shall apply to transfers without consideration, and that "a consideration not reducible to a money value, as love and affection, promise of marriage, etc., is to be wholly disregarded".

But this is not to say that a transfer in discharge of a legal obligation imposed by local law is a transfer without consideration under the taxing act. It is my opinion that the discharge of a legal obligation is clearly "consideration" within the meaning of the tax act, and that the statute by necessary implication makes its own operation in that respect dependent upon State law.

It seems clear that under California Civil Code, Section 206, and the cases construing that section, the incompetent at all times material to this controversy was subject to a legally enforceable obligation to support and maintain her daughters, who were, as pointed out by the majority, "poor persons unable to maintain themselves by work" within the meaning of the California law. Section 206 fixes the obligation as "to the extent of [her] ability". Section 1502 of the California Probate Code provides for the support of the family of an incompetent by the application of the income "as far as may be necessary, to the comfortable and suitable support, maintenance and education" of the family. The measure of the support and maintenance allowance was a matter for the discretion of the California Superior Court, sitting in probate, and its determination that the amounts distributed to the incompetent's daughters were necessary for their comfortable and suitable maintenance is binding upon us.

The decision of the Board should be affirmed.