Jay C. Halls, Albert L. Hopkins, and Harry D. Orr, Jr., all of Chicago, Ill., and Samuel H. Horne, of Washington, D.C., for petitioner.

Ray A. Brown, Samuel O. Clark, Jr., Sewall Key, J. P. Wenchel, and Ralph F. Staubly, all of Washington, D.C., and Samuel H. Levy, Sp. Asst. to Atty. Gen., for respondent.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

## LASKER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8322.

Circuit Court of Appeals, Seventh Circuit.

Dec. 4, 1943.

MAJOR, Circuit Judge.

This matter is here on petition for review of a decision of the Tax Court of the United States, entered December 8, 1942, deciding that there was a deficiency in petitioner's gift tax for the year 1938, in the amount of $51,123.66. (Other questions decided by the Tax Court are not in issue here.) The deficiency was predicated upon the conclusion that payment by petitioner on December 21, 1938 to his then wife, Doris Kenyon Lasker, of the sum of $375,-000 was a gift, taxable as such under Secs. 501 and 503 of the Revenue Act of 1932.

Internal Revenue Acts 1924 to Date, Title 26 U.S.C.A. pages 580 and 585.

There is little, if any, dispute as to the facts out of which the legal controversy arises. They are contained largely in three documents: (1) An ante-nuptial contract between petitioner and Doris Kenyon Sills, executed October 14, 1938, in contemplation of their marriage which occurred October 28, 1938; (2) a settlement contract between the same parties as husband and wife, executed December 21, 1938, by reason of which petitioner paid his wife $375,000, the consideration mentioned therein; and (3) a divorce decree entered June 8, 1939 in the District Court of the State of Nevada, approving the property settlement theretofore voluntarily made and awarding an absolute divorce to Doris Kenyon Lasker.

In the view which we take of the legal problem presented, it appears unnecessary to relate in detail the facts as contained in or the circumstances surrounding the execution of the two contracts or the entry of the divorce decree. At the time of the execution of the ante-nuptial contract, petitioner was a widower 58 years of age, with two daughters and a son, all of whom were of age. His net worth was in excess of $10,000,000, largely securities, with real estate in Florida and in Illinois. Doris Kenyon Sills was a widow 40 years of age with one child, a son 11 years of age, without property of consequence.

By the ante-nuptial contract, petitioner agreed that if upon his death Doris Kenyon Sills "should be living with him as his wife," he would leave a will providing that she should have out of his estate any home or homes which he might thereafter acquire, with furnishings, together with the sum of $200,000 to be allowed as a debt against his estate. The will was also to contain a trust provision in her favor, by which she would receive during her life income from about one-half of petitioner's estate, with the income after her death going to her issue, including the son by a previous marriage. It was also provided that should petitioner die without leaving a will, the contract would define the rights of Doris Kenyon Sills in his estate and be binding thereon. Under this ante-nuptial agreement, she released her rights of dower, survivorship and inheritance. There was also a provision in the agreement that if the parties separated or were divorced, the agreement would become null and void and the property rights of each in the property of the other would be the same as if no ante-nuptial agreement had been made.

Of greater significance is the contract of December 21, 1938, under which petitioner paid his wife $375,000, now claimed by respondent to have been a gift. This contract expressed a desire of the parties to make present settlement of their property rights and more definitely and certainly provide for Mrs. Lasker in satisfaction and discharge of the ante-nuptial agreement and of all the rights of each in the property of the other as husband or wife and as surviving spouse or heir of the other. This settlement agreement provided that the ante-nuptial contract be cancelled and terminated and the parties released and discharged of all rights and obligations thereunder. It was further provided that petitioner's wife was to release, relinquish, waive, quitclaim, assign and convey to petitioner all rights, title and interest of every kind and nature which she as the wife or surviving spouse of petitioner under the laws of the State of Illinois may have acquired or which she might thereafter acquire during his lifetime or at his death by reason of the marriage then existing between them. There was excepted from such release statutory homestead and award for support of a widow and minor children. It was also recited that the agreement was not intended as a separation agreement or a release of petitioner's obligation to support his wife.

The Nevada court, in awarding a divorce to petitioner's wife, found "That the written agreements entered into between the plaintiff and defendant herein, settling the property rights of the plaintiff and defendant, and for support and maintenance, be, and the same hereby are adjudged to be fair and reasonable and are approved * * * that the parties henceforth shall have no right, title or interest whatsoever in or to or respecting any property, real or personal, of any kind or nature whatsoever or estate of the other arising out of or based on said marriage."

Respondent's contention, sustained by the Tax Court, is that a transfer, in order to escape the gift tax, must be for an adequate and full consideration in money, or money's worth, and that petitioner failed to show the payment in question was so made. This contention is predicated upon Sec. 503, which provides: "Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value

of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this title, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year."

The argument follows that petitioner's wife released nothing by the settlement contract except rights which she had acquired under the ante-nuptial contract, and which, because of their indefinite and contingent nature, had a nonascertainable value. In this connection, it should not be overlooked that the ante-nuptial contract expressly provides that it shall become null and void at any time the parties cease living together as husband and wife, in which event the same rights shall obtain between the parties as if the agreement had not been entered into. While we find no definite disclosure in the record, we think it may be assumed that at the time of the December agreement the parties were not living together and that the ante-nuptial agreement had become void. In such event, petitioner's wife had become vested with all property rights provided by the law of Illinois, which rights were released by the December agreement, and this irrespective of the fact that the latter agreement by its terms purported to release rights fixed by the ante-nuptial agreement.

We are of the view, however, that the overall result must be looked to in ascertaining whether the consideration was adequate, that is, the final result which flowed from the ante-nuptial contract, the settlement agreement, as well as the decree in the divorce suit. We think it is unnecessary to indulge in a hair-splitting dissection of these various instruments with a view of ascertaining the contribution made by each to the final result. After all is said and done, the fact remains, and a well near controlling fact it is, that petitioner, with property worth more than $10,000,000, succeeded in acquiring a complete release from all marital liability by the payment of an amount which equaled 3¾% of his property worth. We think there can be no doubt but that petitioner's escape and release from his unfortunate matrimonial adventure constituted adequate and full satisfaction for the payment thus made. In fact, it appears that his liability was settled on a bargain basis. Certainly he was not short-changed.

Furthermore, we are of the view that respondent's contention must be denied because of the proviso contained in Treasury Regulation 79, Art. 8, as follows: "However, a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth." It is not disputed by respondent, in fact we understand it to be conceded, that the transaction in controversy comes clearly within the language of this proviso. Each of the parties was represented by counsel, each was advised as to his or her rights, and especially was petitioner's wife informed as to the total value of petitioner's property. With such knowledge, they bargained and produced a result evidently satisfactory to both. The presence of counsel at the conference table for the purpose of advising and representing the respective parties as to their rights and obligations, together with other relevant facts and circumstances, dispels any rational theory that a payment made in connection with such settlement was intended for or could have been a gift. Respondent argues, however, that the language above quoted from Art. 8 is not controlling and relies upon the following statement in the same Regulation: "A consideration not reducible to a money value, as love and affection, promise of marriage, etc., is to be wholly disregarded, and the entire value of the property transferred constitutes the amount of the gift." No discussion is required to demonstrate the fallacy of respondent's contention in this respect. A mere reading discloses that the last quoted proviso is without application.

Respondent presents the further argument that assuming the consideration for the payment in question was a release by Mrs. Lasker for her dower and marital property rights, nevertheless the decision below should be sustained, on authority of Commissioner v. Bristol, 1 Cir., 121 F.2d 129. The Bristol case is predicated upon a holding (page 135) contrary to that of the Tax Court that a certain proviso directed expressly at the estate tax provisions is also applicable to the gift tax provisions.

The Tax Court, in Jones v. Commissioner, 1 T.C. 1207, decided subsequent to the instant case, again refused to follow the Bristol case in the respect above stated. Also, the Tax Court in the Jones case, with substantially the same questions for decision, reached an opposite conclusion from that of the instant case. In fact, the decision in the Jones case strongly supports

992

petitioner's contention in the instant case. In discussing the arm's length nature of the transaction, the court said: "In either case, whether under award by the court or by agreement between the parties, an existing legal liability on the part of the husband to the wife was settled. The mere form of the transaction under which that liability is satisfied is not controlling. The husband and wife here, acting through their respective attorneys, negotiated a settlement of the wife's right to maintenance and support. The settlement was unquestionably an arm's length transaction for consideration, with no suggestion of donative intent or purpose."

Not only has the Tax Court refused to follow the reasoning of the Bristol case, but so has the District Court in Merrill v. Fahs, Collector, D.C., 51 F.Supp. 120. We agree with the reasons given by the court in the latter case for its refusal to follow the Bristol case.

It is, therefore, our judgment that petitioner was not liable for a gift tax and that the Tax Court was in error in so deciding. The decision is, therefore, reversed and remanded for further proceedings in conformity with such view.