FAHS, Collector of Internal Revenue, v. MERRILL.

No. 10874.

Circuit Court of Appeals, Fifth Circuit.

May 3, 1944.

652

Maryhelen Wigle, Sewall Key, and Harry G. Taylor, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and Herbert S. Phillips, U. S. Atty., of Tampa, Fla., for appellant.

Sam R. Marks and Harry T. Gray, both of Jacksonville, Fla., for appellee.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

The suit in the District Court was for the recovery of a gift tax unlawfully exacted by the Collector. The court gave judgment for the plaintiff June 24, 1943. On Sept. 17, 1943, a notice was filed entitled in the cause and headed "Notice of Appeal", which reads: "Comes now John L. Fahs, United States Collector of Internal Revenue for the District of Florida, defendant in the above entitled case, and gives notice of an appeal from the findings and judgment entered and filed therein on June 24, 1943, to the United States Circuit Court of Appeals of the Fifth Circuit". Appellee moves to dismiss the appeal because not perfected in the manner prescribed by law. The argument is that the notice is not an appeal, but a notice of an intended appeal, and insufficient to give the appellate court jurisdiction, citing Benitez v. Bank of Nova Scotia, 1 Cir., 109 F.2d 743; United States v. New National Coal & Mining Co., 7 Cir., 72 F.2d 168; and Ex parte Hollon Parker, 120 U.S. 737, 7 S.Ct. 767, 30 L.Ed. 818, besides some decisions from State courts. It is true the notice here is not in the precise language of Form 27 under Rule of Civil Procedure 73(b), 28 U.S.C.A. following section 723c: "Notice is hereby given that C. D. and E. F., defendants above named, hereby appeal to the Circuit Court of Appeals," etc. But the Forms are not mandatory. They are, as stated in Rule 84, "intended to indicate, subject to the provisions of these rules, the simplicity and brevity of statement which the rules contemplate." The requirement of Rule 73(b) is: "The notice of appeal shall specify the parties taking the appeal; shall designate the judgment or part thereof appealed from; and shall name the court to which the appeal is taken." This notice does precisely that.

No one could fairly doubt that it gave notice of an appeal then taken rather than that one was intended to be thereafter taken. No one of the cases cited is a construction of the Rules of Civil Procedure. The reasoning of Ex parte Hollon Parker supports the sufficiency of this notice. We hold it to be sufficient and deny the motion to dismiss.

The tax in dispute was assessed in respect of the transfer of $300,000 on May 29, 1939, by plaintiff-appellee Charles E. Merrill to himself as trustee for his wife and her mother. The transfer was disclosed in a gift tax return by Merrill, but under the claim that it was not taxable as a gift, but was for adequate and full consideration in money or money's worth, to-wit the release by the wife of her dower and all property rights in his estate. A tax was nevertheless assessed and collected, and refund being denied, this suit was brought against the Collector.

The deed of trust recites that on March 7, 1939, Merrill and his wife had made an antenuptial agreement providing for the trust, and "pursuant thereto and in consideration thereof" the transfer of the $300,000 is made. The facts found support that recital. The transfer was a part of the antenuptial agreement. Merrill, fifty-three years old, already having been twice married and having three children and some grandchildren, and property amounting in value to over $5,300,000, was about to marry Miss Kinta Desmare. To forestall possible family disputes and simplify his business and facilitate his provisions for his children and grandchildren and for his bride, and antenuptial agreement was made in good faith and in due form on the day before the wedding. Each party was represented by legal counsel. The agreement recites as its main purpose the making of a reasonable provision "in full settlement and satisfaction and in substitution and lieu of any and all rights which upon consummation of said marriage, second party would otherwise have and become entitled to as wife, widow or otherwise, in the property which the first party now has, or may hereafter own, or in his estate upon his death". Mention is also made of the possibility of heavy losses in his business, which was investment banking and stock market operations. Therefore, "in consideration of the premises, and of the solemnization of the aforesaid marriage", Kinta Desmare remises and re-leases, conveys and quitclaims to Merrill all right and title she may acquire as wife and widow in his lands then owned or thereafter acquired, and all right or interest she may thus acquire in all personal property. Merrill agrees within ninety days to make an irrevocable trust of $300,000 to uses desired by Miss Desmare and by will, if his wife survives, an additional trust of $300,000 to like uses; and still further $300,000 for the benefit of any living child or children born of their marriage. These provisions were stipulated not to deprive her or her children of proper support and maintenance in addition. The first described trust is the one now in controversy. Miss Desmare had no property of consequence. Merrill had land in Florida worth $135,000. The remainder of his wealth was mainly in money, stocks, bonds and other securities. Both were domiciled in Florida in 1939, but Merrill had become a resident of New York when this suit was brought.

The taxing statute is Revenue Act of 1932, Sections 501, 502, 503, 47 Stat. 169, 26 U.S.C.A. Int.Rev.Acts, pages 580, 585. The tax is laid on transfers during the calendar year of property by gift, and applies whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible. "Where property is transferred for less than an adequate and full consideration in money or money's worth", then the excess of value is to be taxed as a gift. By the same Act, Section 804, 26 U.S.C.A. Int.Rev.Acts, page 642, the estate tax law was so amended as to provide that a relinquishment or promised relinquishment of dower, curtesy or a statutory estate in lieu thereof, or of other marital rights in the decedent's property or estate "shall not be considered to any extent a 'consideration' in money or money's worth." These words, if written into the gift tax law, would of course settle this controversy in favor of the tax. Though in the same Act, they were added by amendment to the estate tax law only. They were thought significant, if not controlling, touching a gift tax in Commissioner v. Bristol, 1 Cir., 121 F.2d 129, but we prefer to rest our decision on the words of the gift tax sections alone. Our question is, then, What if any consideration in money or money's worth did the transferror, Merrill, receive in this transaction?

654

■ It will be noted that the agreement of March 7, 1939, which is the recited and actual consideration for the transfer, and which alone purports to relinquish anything on the part of Miss Desmare, was made before she was married, when she had no dower or other right whatever in Merrill's property. It is not a case in which one already a wife sells or relinquishes for a consideration the rights which the law has given her, whether she relinquishes them to her husband or to another. We may well concede that in such a case she gives a money value for what she gets. Such is Lasker v. Commissioner, 7 Cir., 138 F.2d 989. This case is one in which a woman offers herself in marriage, and herself alone, for she had no property and the Florida law retains for her all she may after marriage earn or acquire. That law would give her, after marriage, if she survives him, the right to elect dower in her husband's lands and in his personal estate owned at his death; but instead of these uncertain and contingent rights, the parties here agree that these rights shall not come into existence, but another more definite provision shall be made for her. For this substituted provision she pays just what she would have paid for the provision made by law—herself in marriage. Merrill receives that and nothing else. It is what moves him to make a provision for her. When the transaction is consummated he has a wife and $300,000 less money. She has the $300,000 (with more to follow) and has given herself. Marriage is of course a valuable consideration, so recognized by the law. Antenuptial agreements like this are lawful and valid as against everyone, so far as consideration is concerned. But the acquisition of a wife is not a consideration in money or money's worth, and it would be a degradation of the wife to attempt so to value her. The applicable Regulations 79, Art. 8, correctly declare: "A consideration not reducible to a money value, as love and affection, promise of marriage, etc., is to be wholly disregarded and the entire value of the property transferred constitutes the amount of the gift". Merrill received no consideration in money or money's worth.

■■ But if we are wrong in thinking the marriage was the only consideration Merrill received, and if by some hocus pocus of law we ought to regard an interest in Merrill's own property which Miss Desmare did not in fact own to be the consideration for what he did for her, the burden of showing the money value of that interest rests upon Merrill; for this is not a transaction at arm's length in the ordinary course of business as to which an adequate consideration will be presumed; Robinette v. Helvering, Commissioner, 318 U.S. 184, 63 S.Ct. 540, 87 L.Ed. 700. That burden has not been and cannot well be borne. But for the antenuptial agreement the wife would on March 8 have had as inchoate dower one-third interest in fee simple after Merrill's death in the lands he owned at marriage or might acquire during the marriage in Florida, provided she elected in writing within a limited time to apply for it. Comp.Gen.Laws Supp. §§ 5507(1), 5507(2), F.S.A. §§ 731.34, 731.35. Merrill then owned $135,-000 worth of land, his age was known, she was much younger and would probably survive him, so that the present value in money of her dower right in that land could be actuarily computed and would constitute money's worth, but it would not exceed $30,000. There is no evidence whatever that he intended to buy any more land, and therefore no basis for a computation as to any other. The Florida statute above cited would also give her a dower of one-third of the personal property, but only that owned at his death, and to not more than a child's part if there are children other than by her. Merrill's expectancy of life was 18 or 19 years, and no actuary could foretell what personal property he would have at the end of that time, if any. His present personal wealth he might lose in his business or otherwise. As against the dower right he might give it away to his children, or freely dispose of it to suit himself in his lifetime. Smith v. Hines, 10 Fla. 258. It is hard to see where Merrill received any consideration on this item, since he could use and dispose of his personal property, except by will, without his wife's approval or consent. But her right in personal property, such as it was, was also subject to change by the legislature, and it so happens that the law was altered on April 21, 1939, while this transfer was in the making, so that the dower right was made subject to the husband's debts at death and to estate taxes. Laws of 1939, p. 16, Chap. 18999, F.S.A. § 731.34. Again no actuary could estimate what Merrill's debts might be eighteen years hence. And yet further, the peculiar

dower in personal property in Florida would be lost on Merrill's removal to a State which had no such law, for the law of the decedent's domicile governs the descent and distribution of movables. 15 C.J.S., Conflict of Laws, § 18, p. 935. Merrill has already changed his domicile to New York. We see no way to arrive at the money value in 1939 of her prospective dower in personalty under the Florida law, except by the wildest guess.

We repeat our conviction that the true view of this transaction is that in consideration of marriage Merrill made, wisely and rightly, a certain and present provision for his wife in substitution for the uncertain and contingent one given her after his death, at her election, by law. The latter would have been taxable. So is that which was substituted for it.

The judgment is reversed and the cause remanded with direction to enter one in favor of the defendant.

Judgment reversed.

WALLER, Circuit Judge (dissenting).

The whole case turns upon Section 503 of the Revenue Act of 1932 which provides that where property is transferred for less than an adequate and a full consideration in money or money's worth the amount by which the value of the property exceeded the consideration shall be deemed a gift and subject to the Federal Gift Tax.

Perplexity arises in the present case as to which transfer of property we should concern ourselves with—the transfer of dower, and kindred rights by the wife, or the transfer of money by the husband. The majority opinion determines the case from the standpoint of a transfer of $300,000 by a husband to a prospective wife, pursuant to a pre-nuptial agreement, with the result that the majority reaches the conclusion that there did not flow to the prospective husband any, or at least any adequate, consideration in money, or money's worth. It is the view of the majority that all the husband got out of the contract was a wife whose value cannot be measured in money.

A different viewpoint arises, however, out of the fact that the only property, as distinguished from cash, transferred was by the wife in the relinquishment and transfer of all right, title, and interest in "all properties, wheresoever situated, and every right pertaining thereto whether of dower, election, participation, inheritance or other title or allowance." The wife, furthermore, waived, discharged, and released "every interest, claim or demand of whatsoever kind or description, in law or in equity, that may accrue to her or which she may hereafter acquire as wife or widow, in the real and personal property now or hereafter owned by the first party" (husband), to the end that neither the wife nor her heirs would thereafter be entitled to assert any right, claim, or demand whatsoever against any of the properties or estate of the husband, but should be forever barred or excluded therefrom. The transfer of property was from the wife to the husband, but it is not argued that since the husband failed to pay her full and adequate consideration therefor she should pay a gift tax on the excess of the value of the property rights transferred over the amount of the payment therefor.

The pre-nuptial agreement was based on the conditions: (1) that the marriage would be later entered into; (2) that within ninety days "from the date of said marriage" the husband would create a trust and pay over the $300,000.00 in cash thereto. Each of these steps was a sine qua non without which the pre-nuptial agreement would have been merely nudum pactum.

The marriage was consummated, and within ninety days the husband created the trust and paid over the $300,000. When the payment of the $300,000 was made (which is the critical date, or the date which fixes the status of the transaction whether it be a gift or a transfer for a consideration in money or money's worth), it was not made to a prospective bride, as observed in the majority opinion, but was made to a wife, who was then lawfully possessed of the rights and status of a wife in the property transferred, and who, by the signing of the trust indenture and by the acceptance of the trust, reaffirmed and ratified her relinquishment of dower and other wifely property rights and privileges described above.

This situation presents the question of whether or not the wife, who in actuality parted with inchoate property rights in excess of $1,700,000 for the present sum of $300,000, transferred property for a full consideration in money or money's worth. There certainly can be no doubt that when the wife on May 29, 1939, accepted the

trust and the $300,000 she was the wife of the husband, legally entitled to dower in real and personal property, and possessed of all the other rights of a married woman in Florida; and there can be no doubt that her present, but inchoate, interest in the property then owned by her husband was five or six times greater than the amount of cash paid for it. There can be no doubt that she parted with vested and contingent interests in property considerably in excess of the cash received, but oddly, and inaptly, the cash has been made the subject of the majority's inquiry rather than the excess of the value of the wife's property over the cash.

A contract does not become a gift merely because one of the traders made a better deal than the other. The trade was entered into in good faith and without fraud. We are not here concerned with whether the husband or the wife got the best of the bargain in this transaction. We are to determine whether or not there was full and adequate consideration in money or money's worth moving between the parties. Consideration may be either of benefit to one or a detriment to the other party to the contract. Those who insist that the wife was merely a donee seem to disregard the consideration that she parted with, and in order to justify themselves in doing this they weigh the transaction before its maturity, or at a time prior to the payment of the $300,000. If it were a gift, it was a gift when payment was made, and not before. That was after marriage. In order for the agreement to be binding it had to be consummated by marriage and the trust agreement had to be made and money paid after marriage. To the majority the controlling circumstance in fixing the status of the parties was not the payment of the money, but was the signing of a contract to relinquish dower, etc., which, for its effectiveness, was dependent upon the happening of contingencies.

The day on which the $300,000 was paid is the critical date. Nevertheless, the main opinion says: "It is not a case in which one already a wife sells or relinquishes for a consideration the rights which the law has given her, whether she relinquishes them to her husband or to another. We may well concede that in such a case she gives a money value for what she gets. Such is Lasker v. Commissioner, 7 Cir., 138 F.2d 989. This case is one in which a woman offers herself in marriage, and herself alone, for she had no property and the Florida law retains for her all she may after marriage earn or acquire."

But the majority overlooked the fact that the pre-nuptial agreement could not have binding effect unless: (1) marriage subsequently took place; (2) the payment of the $300,000 was made within ninety days after marriage; and (3) the trust agreement was also executed by both parties after marriage. The wife got nothing until after she became a wife and possessed of dower and other rights under the Florida law. Then it was that the $300,000 was paid to her—not as a prospective wife but as an actual wife invested with the rights which, in consideration of marriage and the forthcoming payment of $300,000, she had agreed to relinquish. Does anyone doubt that if there had been no marriage the agreement would have been in effect? Can there be any room for argument that the money was neither paid nor payable to her as a feme sole but only as a wife of the taxpayer? The transaction can only be gauged by the status that existed when the payment was made. The tax is applied to the payment, not to the relinquishment. If it were a gift, it was made on May 29, 1939, after the marriage, and not on March 7, 1939, the date of the initial agreement. If it were a transaction in money or money's worth, the transaction was effectuated and consummated on the date it was paid, May 29, and the status of the parties on the date of the payment is important in arriving at the tax consequences. The majority has considered the status of the parties on the date of the pre-nuptial agreement as the critical date in disregard of the fact that nothing was paid on the date of the contract on March 7, nor until the wife had something to relinquish. She would not have been bound by any agreement, pre-nuptial or otherwise, for the relinquishment of such rights if the consideration therefor were not paid as provided in the contract, and until the payment the agreement was still executory. There can be no doubt of the wife's right to have rescinded such a contract upon a failure to pay the consideration.

The wife sold her contingent and inchoate rights to one-third of $5,300,000 for $300,000. The husband purchased those inchoate and contingent rights for $300,000. That is consideration in money's

worth—in any language, from whatever end it may be viewed.

The majority based its decision upon the conclusion that the husband received no consideration in money's worth for his part in the transaction, notwithstanding that he recaptured for himself and his estate an inchoate interest in one-third of $5,300,000 which by operation of law marriage had conferred upon her. The majority opinion recognizes that in Florida a pre-nuptial agreement can be specifically enforced. It recognizes that there is no prohibition against the making of such agreements and that they are not illegal as being contrary to public policy or statute, nevertheless, the majority insisting that the only consideration that the husband received for his $300,000 was a wife, refuses to give effect to the agreement. The view that the husband did not receive for himself or his estate property rights of a value equivalent to, or in excess of, the money which he paid out, is not supported by the law or the facts.

The average man strives not only for the support and appropriate maintenance of his family during his lifetime, but one of the greatest desires of a husband and father is to leave his estate in such shape that those dependent upon him for support and maintenance may after his death find that support in the property which he has accumulated and left to them. A consideration that flows to one's estate is as much a consideration as if it were enjoyed in his lifetime. Life insurance is a good example. The fact that one accumulates assets for the support and maintenance of his family when he is gone suggests that there was a consideration moving to him in the accumulation of such assets. The $300,000 which Mr. Merrill paid out secured an asset to him and to his estate, worth at that time in excess of $1,700,000 —no mere bagatelle. Mr. Merrill also received benefits that flowed to him rather than his estate, some of which were: (a) the right to transact his business without any veto power on the part of his wife; (b) lessening of the possibility of friction between him, his wife, and her step-children; (c) eliminating the most frequent menace to conjugal and family congeniality. Merrill previously had financial difficulties with a prior wife who had sought to have large properties awarded to her. "A burnt child dreads the fire", and he doubtless deemed it worthwhile to buy and pay for insurance against the third wife demanding large alimony as had the second. It is not difficult to embrace his theory. The acquisition, by money or money's worth, of family, conjugal, and financial congeniality, does not characterize sums reasonably expended therefor as a "gift". If all the sums spent by husbands in this endeavor were considered gifts and taxable as such, few other forms of taxation would be required to run the government and to pay the war debt. Reasonable investments in property that are conducive to domestic tranquillity and are helpful in business are not necessarily gifts.

It appears beyond question that the husband or his estate was acquiring inchoate rights in one-third of an estate of $5,300,-000 for the present sum of $300,000, and if the husband trimmed the wife in the deal no tax consequences follow for that reason. The wife doubtless preferred a bird in the hand to two in the bush.

The fact that the Legislature might change the law; that the husband might lose his wealth; that he might move to another state where the marital rights of the wife were different, which possibilities are advanced to support the conclusions of the main opinion, are but arguments in support of the practicality of purpose of the parties to put such contingencies at rest once and for all time. The attainment of financial certainty and the elimination of domestic inharmony due to financial conflicts are considerations of so great a price—a consummation so devoutly to be wished—that husbands and wives, when trading to that end, should not be subjected to the gift tax merely because they did not attempt to swap penny for penny.

The decision of the lower Court was correct and should have been affirmed.