## WEMYSS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9724.

Circuit Court of Appeals, Sixth Circuit.

July 24, 1944.

Writ of Certiorari Granted Dec. 4, 1944.

See 65 S.Ct. 270.

Cecil Sims, of Nashville, Tenn. (J. W. Allen, Cecil Sims, and Bass, Berry & Sims, all of Nashville, Tenn., on the brief), for petitioner.

I. Henry Kutz, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, Robert N. Anderson, and I. Henry Kutz, all of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

This gift tax litigation stems from a prenuptial contract in writing, dated May 24, 1939, between the petitioner, William H. Wemyss, and a widow, Mrs. Ellen Stokes More, whom he married on June 20, 1939. Sometime prior to the execution of the contract, petitioner made a proposal of marriage to Mrs. More. Her answer was that

she would be unwilling to marry him and lose in consequence a life income provided for her "until her remarriage" under trust indentures executed by her deceased husband, E. L. More, unless petitioner would enter into a premarriage contract to make good her loss.

Petitioner agreed to meet her requirements, even to the detail of the securities to be transferred to her. Her father, who was a lawyer, prepared the premarriage contract with succinct legal documentation. The widow exacted that the contract be carried out by the actual transfer and delivery to her of the stocks described therein prior to the performance of the marriage ceremony. The premarriage contract designated the date for the ceremony and the parties consummated the marriage as scheduled.

The agreement recited that upon consummation of the marriage, Mrs. More would be deprived of a large monthly income, and that it was the desire and intention of the petitioner to compensate her for such loss and to provide and maintain her permanently in keeping with her station in life. The 13,139 shares of common stock of General Shoe Corporation which were transferred and delivered to Mrs. More on the date of the execution of the contract were described by certificate number. The contract was acknowledged by the two parties, and on the day following the marriage ceremony was recorded in the register's office of their resident county in Tennessee.

Immediately after the marriage, the petitioner executed a will, in which he provided that his wife should have a life estate during widowhood in a certain farm and that one-third of his estate, less the value of all except 2,000 shares of General Shoe Corporation stock already transferred, should be held in trust for her.

The corpus of the trust estate, in which the former Mrs. More lost her interest upon remarriage, consisted of 670 shares of stock in the Arcade Company of Nashville, Tennessee. The trust indenture executed by her first husband provided that the entire net income of the trust estate should be paid to her during her lifetime, or until her remarriage, for the maintenance and support of herself and their son. The trusts, however, were separate and independent trusts for the widow and for the son. From February 9, 1934, to June 20, 1939, Mrs. More had received $29,428.89 from the trusts created by her first husband, as income for her own use, and an equal amount for the use and benefit of her son.

At the time Mrs. More entered into the marriage contract with the petitioner, William H. Wemyss, she was 44 years of age and he was 59.

On this state of facts, the Commissioner of Internal Revenue determined that the transfer by petitioner to Mrs. More, on May 24, 1939, of the 13,139 shares of General Shoe Corporation stock, was not for a consideration in money or money's worth, and accordingly that the transfer constituted a gift of an amount equal to the value of the stock, which he determined to be $149,456.13. The United States Tax Court, one judge dissenting, upheld the commissioner in his determination of a tax deficiency against the petitioner upon that basis; and the taxpayer, by appropriate petition, has brought the case here for review.

The tax court conceded the correctness of petitioner's contention that the agreement to marry constituted a valuable consideration for the transfer of the stock. Prewit v. Wilson, 103 U.S. 22, 26 L.Ed. 360; Barnum v. Le Master, 110 Tenn. 638, 73 S.W. 1045, 69 L.R.A. 353. It was, therefore, declared that no taxable gift was made, if only section 501(a) of the Revenue Act were to be considered.[1]

But the tax court held that the transfer was made for less than an adequate and full consideration in money or money's worth and was therefore subject to gift tax under section 503 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 585, which provides: "Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this title, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year." Marriage, as a consideration, was deemed immeasurable in money or money's worth,

[1] "Sec. 501. Imposition of Tax. (a) For the calendar year 1932 and each calendar year thereafter a tax, computed. as provided in section 502, shall be imposed upon the transfer during such calendar year by any individual, resident or nonresident, of property by gift." 26 U.S.C.A. Int. Rev.Acts, page 580.

and the value of the property transferred was held to be the amount taxable as a gift, not to be reduced by the value of the wife's interest in her first husband's trusts lost by her upon her marriage to petitioner.

The tax court construed section 503 of the Revenue Act as supplementary to section 501, and as manifesting the intention of Congress to include within the category of gift taxation not only a transfer which constituted a gift at common law but also a transfer of property for less than an adequate and full consideration in money or money's worth. A promise of marriage was not deemed by the court to be such consideration. Articles 1 and 8 of Treasury Regulations 79[2] were stressed as definitive and binding, especially in view of the repeated re-enactment of the statute which these regulations construed. Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52, and Taft v. Commissioner, 304 U.S. 351, 58 S.Ct. 891, 82 L.Ed. 1393, 116 A.L.R. 346, were cited.

The tax court reasoned that, assuming the loss by the wife of the income from the trusts created by her first husband was the consideration for the transfer to her of the Shoe Corporation stock "rather than a mere consequence of the marriage," the petitioner could not prevail for the reason that he acquired no right in or income from the trusts but received merely a promise of marriage, not measurable in money or money's worth. It was considered that the word "gift" must necessarily be construed in the broadest and most comprehensive sense. Robinette v. Helvering, 318 U.S. 184, 63 S.Ct. 540, 87 L.Ed. 700; Smith v. Shaughnessy, 318 U.S. 176, 63 S.Ct. 545, 87 L.Ed. 690.

The court pointed out that unless the gift tax should be imposed when the transfer was made, the excise upon the transfer would be "altogether escaped;" and that the gift tax and the estate tax are in pari materia, an important purpose of the former

being to prevent or compensate for avoidance of death taxes by taxing gifts of property inter vivos which, except for the gifts, would be subject to the tax upon transfers at death. Estate of Sanford v. Commissioner, 308 U.S. 39, 60 S.Ct. 258, 84 L.Ed. 20. It was thought reasonable to assume that Congress, being aware that "a transfer in consideration of marriage would not be a true gift since it would be based upon a valuable consideration," deliberately adopted language with intent to close the door against "this method of escaping tax upon a transfer of property," even though the transfer, as concededly in the instant case, may not have been animated by a tax-saving motive. The treasury regulations were regarded as correctly interpreting the law; and, as so construed, section 503 was held, contrary to the contention of the petitioner, not to be violative of the Fifth Amendment to the Federal Constitution.

A further reason for rejecting the petitioner's claim for refund was found by the tax court in petitioner's failure to prove the actual value of his wife's interest under the trusts established by her first husband. Passing comment was made, moreover, that the interest in the trust estate surrendered by Mrs. More upon her marriage to petitioner inured entirely to the benefit of her infant son.

Inasmuch as we are not in accord with the decision of the tax court, due deference has caused our somewhat detailed narrative of its rounded viewpoint. To our thinking, the correct basis of decision here is simple. The record reveals in actuality no semblance of a premarriage gift of stock by the petitioner to his affianced. She bargained with him at arm's length before she cut herself off by remarriage from her interest in the trust estate created by her first husband. She sustained a very real and substantial detriment as the consideration for her promise to marry the petitioner. This detriment was definitely measurable in money or

[2] "Art 1. * * * The tax is not limited in its imposition to transfers of property without a valuable consideration, which at common law are treated as gifts, but extends to sales and exchanges for less than an adequate and full consideration in money or money's worth (See Article 8). * * *

"Art. 8. Transfers reached by the statute are not confined to those only which, being without a valuable consideration, accord with the common law concept of gifts but embrace as well sales, exchange, and other dispositions of property for a consideration in money or money's worth to the extent that the value of the property transferred by the donor exceeds the value of the consideration given therefor. * * * A consideration not reducible to a money value, as love and affection, promise of marriage, etc., is to be wholly disregarded, and the entire value of the property transferred constitutes the amount of the gifts.

money's worth. The circumstances that the money detriment which she sustained did not move to the benefit of petitioner except in the acquisition of the lady of his choice as wife does not lessen the business-like nature of the transaction. The tax court itself found no evidence of an actual donative intent upon the part of petitioner in transferring the stock.

We do not read section 503 of the revenue act as requiring its application to a case where a detriment, measurable in money or money's worth, suffered by the transferee does not inure to the benefit of the transferor in money or money's worth. True it is that Congress could tax a transfer whether or not made with donative intent; but when section 503 is construed, as supplementary to section 501, as the tax court construed it and as we think it should be construed, the donative intent must exist in order to subject the transfer of the property to taxation as a gift. If Article 8 of Regulation 79 be interpreted as extending gift tax liability beyond the plain language of the statute, re-enactments of the statute do not constitute an adoption by Congress of the administrative construction. See Busey, Collector of Internal Revenue v. Deshler Hotel Co., 6 Cir., 130 F.2d 187, 142 A.L.R. 563, for full discussion.

But we do not regard Article 8 of Regulation 79 as applicable to the facts of this case. The transfer of the property involved herein was not for a consideration of a mere promise of marriage; the consideration for the transfer was not only a promise to marry but a concomitant surrender by the transferee of a life income in an existing trust fund.

It is idle to argue that any importance attaches to the fact that Mrs. More forfeited her interest in the trust fund of her first husband when she became Mrs. Wemyss and not when she promised to become Mrs. Wemyss. She kept her promise to become Mrs. Wemyss and thereby incurred the loss of her interest in the trust fund. The detriment she suffered in money or money's worth was as real when viewed from the one time-point as from the other; and the consideration paid her was as valuable at the one time as at the other.

This case differentiates from those cases in which prospective husbands and wives have entered into prenuptial agreements as to the interest to be acquired by the lady in the property and estate of the gentleman.

In these cases the prospective wife was agreeing to surrender only herself to the bonds of matrimony without an accompanying surrender of any property owned by her. She was providing against the exigencies of matrimony by fixing a definite basis for her participation in the property or estate of the man she was about to marry. For example, see Commissioner of Internal Revenue v. Bristol, 1 Cir., 121 F.2d 129.

Here the prospective wife was not contracting concerning the subject matter of her interest in the estate of the prospective husband. She was agreeing upon a present transfer made to indemnify her against loss of existing property rights which would ensue in consequence of her remarriage.

Furthermore, the Wemyss transfer is completely disassociated from any indicia of an intent to avoid or reduce death taxes. The minds of the contracting parties at the time of the transfer were obviously upon their future life together and not upon the effect of the transfer in the event of the death of either. In no aspect was the transfer made in contemplation of death.

Authorities pertaining to property settlements in relation to divorce bear no relevancy here and will not be cited or discussed.

This case is sui generis, easily and correctly justiciable upon simple grounds. Manifestly, there was no donative intent in the transfer sought to be taxed as a gift and the transfer itself was not a donative action, within the meaning of section 503 of the Revenue Act or any other sections of the Gift Tax Statute.

In view of our interpretation of section 503 in its relation to the instant controversy, it is unnecessary to consider the argument of petitioner that, should the statute be construed as arbitrarily taxing bona fide transfers for a valuable consideration when not in fact gifts nor intended or capable of being employed to evade the gift tax, the section would be violative of the Fifth Amendment to the Constitution of the United States. Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772.

In our judgment, the law does not require that the difference in value between that which petitioner conveyed to his affianced and that which she surrendered in money or money's worth by marrying him be calculated and the excess value taxed under section 503. Compare Herbert Jones

82

v. Commissioner, 1 T.C. 1207; Lasker v. Commissioner of Internal Revenue, 7 Cir., 138 F.2d 989.

What she surrendered in good faith was of quite substantial value in money's worth and was a sufficiently real consideration in money's worth to negative a gift-motive concept in the excess in value of the property transferred. We are not in accord with the opinion expressed by the majority of the Court of Appeals for the Ninth Circuit in Commissioner of Internal Revenue v. Greene, 119 F.2d 383, 386. We find the reasoning in Lasker v. Commissioner of Internal Revenue, supra, more congenial to our own views. This court has previously expressed, in the language of Judge Hamilton, its concept of the meaning of the word "gift" in the revenue statutes. Commissioner of Internal Revenue v. Montague, 6 Cir., 126 F.2d 948, 951.

■ A donative intent followed by a donative act is essential to constitute a gift; and no strained and artificial construction of a supplementary statute should be indulged to tax as a gift a transfer actually lacking donative intent.

The decision of the Tax Court is reversed.

