## ROBINETTE *v.* HELVERING, COMMISSIONER OF INTERNAL REVENUE.*

No. 499. Argued January 14, 1943.—Decided February 15, 1943.

*Together with No. 500, *Paumgarten* v. *Helvering, Commissioner of Internal Revenue,* also on writ of certiorari, 317 U. S. 620, to the Circuit Court of Appeals for the Third Circuit.

*Mr. Henry A. Mulcahy*, with whom *Mr. Guilford S. Jameson* was on the brief, for petitioners.

*Mr. Arnold Raum*, with whom *Solicitor General Fahy, Assistant Attorney General Clark*, and *Messrs. Sewall Key, J. Louis Monarch*, and *L. W. Post* were on the brief, for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

This is another case [1] under the gift tax provisions of the Revenue Act of 1932, §§ 501, 506, which, while presenting certain variants on the questions decided in *Smith* v. *Shaughnessy, ante*, p. 176, is in other respects analogous to and controlled by that case.

In 1936, the petitioner, Elise Paumgarten (nee Robinson), was thirty years of age and was contemplating marriage; her mother, Meta Biddle Robinette, was 55 years of age and was married to the stepfather of Miss Robinson. The three, daughter, mother and stepfather, had a conference with the family attorney, with a view to keeping the daughter's fortune within the family. An agreement was made that the daughter should place her property in trust, receiving a life estate in the income for herself, and creating a second life estate in the income for her mother and stepfather if she should predecease them. The remainder

---

[1] These two matters have been considered as one case below and will be so treated here.

was to go to her issue upon their reaching the age of 21, with the further arrangement for the distribution of the property by the will of the last surviving life tenant if no issue existed. Her mother created a similar trust, reserving a life estate to herself and her husband and a second or contingent life estate to her daughter. She also assigned the remainder to the daughter's issue. The stepfather made a similar arrangement by will. The mother placed $193,000 worth of property in the trust she created, and the daughter did likewise with $680,000 worth of property.

The parties agree that the secondary life estates in the income are taxable gifts, and this tax has been paid. The issue is whether there has also been a taxable gift of the remainders of the two trusts. The Commissioner determined that the remainders were taxable, the Board of Tax Appeals reversed the Commissioner, and the Circuit Court of Appeals reversed the Board of Tax Appeals. 129 F. 2d 832.

The petitioners argue that the grantors have not relinquished economic control and that this transaction should not be subject both to the estate and to the gift tax. What we have said in the *Smith* case determines these questions adversely to the petitioners. However, the petitioners emphasize certain other special considerations.

*First.* Petitioners argue that since there were no donees in existence on the date of the creation of the trust who could accept the remainders, the transfers cannot be completed gifts. The gift tax law itself has no such qualifications. It imposes a tax "upon the transfer . . . of property by gift." And Treasury Regulations 79, Art. 3, provide that "The tax is a primary and personal liability of the donor, is an excise upon his act of making the transfer, is measured by the value of the property passing from the donor, and attaches regardless of the fact that the identity of the donee may not then be known or ascertainable." We are asked to strike down this regulation

as being invalid because inconsistent with the statute. We do not think it is. As pointed out in the *Smith* case, the effort of Congress was to reach every kind and type of transfer by gift. The statute "is aimed at transfers of the title that have the quality of a gift." *Burnet* v. *Guggenheim*, 288 U. S. 280, 286. The instruments created by these grantors purported on their face wholly to divest the grantors of all dominion over the property; it could not be returned to them except because of contingencies beyond their control. Gifts of future interests are taxable under the Act, § 504 (b), and they do not lose this quality merely because of the indefiniteness of the eventual recipient. The petitioners purported to give the property to someone whose identity could be later ascertained and this was enough.

*Second.* It is argued that the transfers were not gifts but were supported by "full consideration in money or money's worth." [2] This contention rests on the assumption that an agreement between the parties to execute these trusts was sufficient consideration to support the transfers. We need not consider or attempt to decide what were the rights of these parties as among themselves. Petitioners think that their transaction comes within the permissive scope of Art. 8 of Regulations 79 (1936 edition) which provides that "a sale, exchange, or other transfer of property made in the ordinary course of

---

[2] Section 503 of the 1932 Act, 47 Stat. 169, provides that "Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this title, be deemed a gift, . . ." This language is interpreted in the House and Senate Committee Reports as follows: "The tax is designed to reach all transfers to the extent that they are donative, and to exclude any consideration not reducible to money or money's worth." House Report No. 708, 72d Cong., 1st Sess., p. 29; Senate Report No. 665, 72d Cong., 1st Sess., p. 41.

business (a transaction which is bona fide at arm's length, and free from any donative intent) will be considered as made for an adequate and full consideration in money or money's worth." The basic premise of petitioner's argument is that the moving impulse for the trust transaction was a desire to pass the family fortune on to others. It is impossible to conceive of this as even approaching a transaction "in the ordinary course of business."

*Third.* The last argument is that "in any event, in computing the value of the remainders herein, allowance should be made for the value of the grantor's reversionary interest." Here, unlike the *Smith* case, the government does not concede that the reversionary interest of the petitioner should be deducted from the total value. In the *Smith* case, the grantor had a reversionary interest which depended only upon his surviving his wife, and the government conceded that the value was therefore capable of ascertainment by recognized actuarial methods. In this case, however, the reversionary interest of the grantor depends not alone upon the possibility of survivorship but also upon the death of the daughter without issue who should reach the age of 21 years. The petitioner does not refer us to any recognized method by which it would be possible to determine the value of such a contingent reversionary remainder. It may be true, as the petitioners argue, that trust instruments such as these before us frequently create "a complex aggregate of rights, privileges, powers and immunities and that in certain instances all these rights, privileges, powers and immunities are not transferred or released simultaneously." But before one who gives his property away by this method is entitled to deduction from his gift tax on the basis that he had retained some of these complex strands it is necessary that he at least establish the possibility of approximating what value he holds. Factors to be considered in fixing the value of this contingent reservation as of the date of the

gift would have included consideration of whether or not the daughter would marry; whether she would have children; whether they would reach the age of 21; etc. Actuarial science may have made great strides in appraising the value of that which seems to be unappraisable, but we have no reason to believe from this record that even the actuarial art could do more than guess at the value here in question. *Humes* v. *United States*, 276 U. S. 487, 494.

The judgment of the Circuit Court of Appeals is

*Affirmed.*

MR. JUSTICE ROBERTS dissents for the reasons set forth in his opinion in *Smith* v. *Shaughnessy*, *ante*, p. 176.