ESTATE OF LOUIS J. KOLB, DECEASED, RALPH A. GIBBS AND ALBERT R. MURPHY, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1380. Promulgated August 13, 1945.

*John F. Greaney, Esq.*, *George Wharton Pepper, Esq.*, and *Thomas Stokes, Esq.*, for the petitioners.

*Paul E. Waring, Esq.*, for the respondent.

590

OPINION.

LEECH, *Judge*: Respondent determined the contested deficiency in gift tax for 1939 on the ground "that a completed gift in the amount of $706,301.25 was made on May 31, 1939, upon the relinquishment by the donor of his power to name additional beneficiaries under a trust indenture dated June 27, 1923." In so doing, he therefore included in the value of the alleged gift the value of the entire corpus of the trust on May 31, 1939. Subsequent to this determination, Congress enacted section 502 (b) of the Revenue Act of 1943, which amended section 501 of the Revenue Act of 1932 (imposing a gift tax) by adding subsection (c) thereto.[1] Because of the provisions of the first sentence in that subsection, respondent now concedes that there shall be excluded from the value of the trust corpus by which the disputed gift tax is to be measured, the value at May 31, 1939, of the property transferred to

[1] SEC. 502. CERTAIN DISCRETIONARY TRUSTS IN CONNECTION WITH GIFT TAX.

*  *  *  *  *  *  *

(b) AMENDMENT OF REVENUE ACT OF 1932.—Section 501 of the Revenue Act of 1932 (imposing a gift tax) is amended by inserting at the end thereof the following:

"(c) CERTAIN DISCRETIONARY TRUSTS.—In the case of property in a trust created prior to January 1, 1939, if on and after January 1, 1939, no power to revest title to such property in the grantor could be exercised either by the grantor alone, or by the grantor in conjunction with any other person not having a substantial adverse interest in the disposition of such property or the income therefrom, then a relinquishment by the grantor on or after January 1, 1939, and prior to January 1, 1940, of power or control with respect to the distribution of such property or the income therefrom by an exercise or other termination of such power or control shall not be deemed a transfer of property for the purposes of this title. If such property was transferred in trust, the grantor not retaining such power to revest title thereto in himself, or if such power to revest title to such property in the grantor was relinquished, while a law was in effect imposing a tax upon the transfer of property by gift, this subsection shall apply only if (1) gift tax was paid with respect to such transfer or relinquishment, and not credited or refunded, or a gift tax return was made within the time prescribed on account of such transfer or relinquishment but no gift tax was paid with respect to such transfer or relinquishment because of the deductions and exclusions claimed on such return, and (2) the grantor consents, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, for all purposes of this title to treat such transfer or relinquishment in the calendar year in which effected, and for all periods thereafter, as having been a transfer of property subject to tax under this title. This subsection shall not apply to any payment or other disposition of income occurring prior to the termination of power or control with respect to the future disposition of income from the trust property."

the trust by petitioners' decedent during years in which no law imposing a gift tax was in effect. That this action was proper is obvious. The only conceivable doubt, we think, would be whether the contingent right reserved by decedent to name after-born grandchildren as additional beneficiaries rises to the dignity of a "power or control" within the section. Even respondent admits that it did no more. And, if its status was less than that, the gifts were complete, for gift tax purposes, when the transfers to the trust were made. *Sanford's Estate* v. *Commissioner*, 308 U. S. 39; *Rasquin* v. *Humphreys*, 308 U. S. 54; *Smith* v. *Shaughnessy*, 318 U. S. 176; *Robinette* v. *Helvering*, 318 U. S. 184.

This concession leaves for consideration the question of whether the relinquishment by decedent on May 31, 1939, of his right to name after-born grandchildren as beneficiaries of the trust, to the extent of the then value of that part of the property of the trust which was transferred thereto by decedent during years in which a gift tax law was in effect, constituted a taxable gift. And, if so, whether petitioners are relieved from the payment of the tax thereon under the provisions of the second sentence of section 502 (b) of the Revenue Act of 1943, *supra*.

Petitioners urge the negative of the first proposition and the affirmative of the second. Respondent argues the affirmative of the first and the negative of the second.

It is true that if we were considering the propriety of a gift tax upon these transfers in connection with a later imposition of an estate tax upon the same property, the propriety of the former would not necessarily exclude the latter. *Smith* v. *Shaughnessy, supra; Commissioner* v. *Field Estate*, 324 U. S. 113, reversing C. C. A., 2d Cir., 144 Fed. (2d) 62, which reversed 2 T. C. 21. But the present situation is significantly different. We are concerned here with the legality of the imposition of a gift tax upon the relinquishment of a contingent right by the donor in 1939, measured by the then value of property irrevocably transferred to the trust by the donor during earlier years. The question is merely upon the happening of which of two events does a *gift tax* arise. It can not arise twice—wholly or partially. As Justice Cardozo pertinently said in *Burnet* v. *Guggenheim*, 288 U. S. 280, "Congress did not mean that the tax should be paid twice, or partly at one time and partly at another. * * * There must be a choice, and a consistent choice, between the one date and the other." The answer to the first proposition, therefore, turns on whether the transfers to the trust were completed gifts for tax purposes when made, or did not become so until decedent relinquished his contingent rights on May 31, 1939.

There were three interests involved in the transfers to the trust.

These were: (1) The primary estate for a term of years of the daughter, Elizabeth K. Gibbs; (2) the secondary life estates of the grandchildren; and (3) the remainder interests of the great-grandchildren.

The respondent argues that none of the interests included in the several transfers to the trust were complete as gifts when the transfers were made because decedent reserved the right to designate after-born grandchildren who, together with their children, would share equally with those named in the trust.

Clearly, in our opinion, upon the making of each separate transfer to the trust by decedent, the gift of the income therefrom for a term of years to his daughter, Elizabeth K. Gibbs, became complete for gift tax purposes. At no time thereafter could her right to that income be taken away or diminished. True, assuming that a grandchild might have been born afterwards, the designation of such grandchild as a beneficiary by decedent would have lengthened the period during which the daughter would have been entitled to the income and thus increased the value of her interest, since she would have been entitled to such income until that grandchild reached the age of 30. Thus, while the contingent right reserved by decedent donor to designate after-born grandchildren as beneficiaries, if exercised, might add to the gift to the daughter, Elizabeth K. Gibbs, it could not by any conceivable possibility decrease the gift to her after each transfer to the trust was made.

Nor do we think the gifts of secondary life estates to the grandchildren and the remainders to the great-grandchildren upon the making of each separate transfer to the trust were any less complete for gift tax purposes because of the reserved contingent rights.

It is said that this retained right constituted such "economic control" of the trust as to deprive the irrevocable transfer of completeness for gift tax purposes. We do not agree. We think the decisions of the Supreme Court in *Smith* v. *Shaughnessy, supra,* and *Robinette* v. *Helvering, supra,* are apposite and compel the opposite conclusion. The holding in those cases clearly is that where the grantor has surrendered all dominion and control of the property of the trust, which control the grantor can never again exercise except upon the happening of an event beyond his control—in the present case, the birth of an additional grandchild—there has been a completed gift.[2]

In *Smith* v. *Shaughnessy, supra,* the donor made a transfer of stock in trust to pay the income to his wife for life; *upon her death the stock to be returned to him if living;* if he was not then living it was to go on her death to her appointees by will, and in default of a will to her next of kin under the New York intestate laws. The Commissioner

[2] See also the dissent of Mr. Justice Roberts in the *Shaughnessy* case, which he applied to the *Robinette* case as well.

assessed a gift tax on the value of the total corpus of the trust. The donor paid under protest and sued for a refund. The District Court held there was a completed gift of a life estate to the wife, but that the remainder had not been completely transferred and was not subject to a gift tax. The Government appealed and the Circuit Court of Appeals for the Second Circuit reversed. Certiorari was granted. The Supreme Court said that three interests are involved: (1) The life estate of the widow, which taxpayer concedes is taxable; (2) the reversion to the settlor in case he outlives his wife, which the Government concedes can be valued and is not subject to gift tax; and (3) the remainder to the wife's appointees or next of kin, as to which the controversy arises. The Government contended that for gift tax purposes the taxpayer had abandoned control of the remainder (although in event of his wife's death before him the fund would revert to him) and that it was therefore taxable. The Supreme Court sustained this view, saying:

> The essence of a gift by trust is the abandonment of control over the property put in trust. The separable interests transferred are not gifts to the extent that power remains to revoke the trust or recapture the property represented by any of them, *Burnet* v. *Guggenheim, supra*, or to modify the terms of the arrangement so as to make other disposition of the property, *Sanford* v. *Commissioner, supra*. In the *Sanford* case the grantor could, by modification of the trust, extinguish the donee's interest at any instant he chose. In cases such as this, where the grantor has neither the form nor substance of control *and never will have unless he outlives his wife*, we must conclude that he has lost all "economic control" and that the gift is complete except for the value of his reversionary interest. [Emphasis supplied.]

To the same effect is *Robinette* v. *Helvering, supra*, a companion case to *Smith* v. *Shaughnessy*. There the taxpayer was a young woman who contemplated marriage. Her mother was living and had married again. Taxpayer transferred to a trustee $680,000 to pay income to herself for life, on her death to pay the income to her mother and stepfather if she should predecease them, with remainder to her issue upon their reaching the age of 21. *If no issue existed the remainder was to pass by the will of the last surviving life tenant, viz., herself, her mother, and her stepfather*. It was agreed that the secondary life estates were taxable gifts. The issue was whether there had been a taxable gift of the remainder. The Commissioner determined that the remainders were taxable; the Board of Tax Appeals reversed; the Circuit Court of Appeals for the Third Circuit reversed the Board of Tax Appeals; and the Supreme Court affirmed the Circuit Court, saying:

> The petitioner argues that the grantors have not relinquished economic control and that this transaction should not be subject both to the estate and to the gift tax. What we have said in the Smith case determines these questions adversely to the petitioner. * * *

* * * The instruments created by these grantors purported on their face wholly to divest the grantors of all dominion over the property; *it could not be returned to them except because of contingencies beyond their control.* [Emphasis supplied.]

Respondent, in attempting to distinguish these cases, argues that:

The interests held by the grantors in the above cited cases, which might or might not arise in the future and which were not in any sense a present power over the economic benefits of the trusts, are not comparable to those involved herein, where the instant grantor had a power which was presently existing but not presently exercisable.

No sound basis, we think, exists for any such distinction. The right to exercise the reserved control in each of the cited cases was equally contingent with that here. In those cases, as in this, that right depended upon the happening of an event beyond the control of the donor. It is true that the quantum of control reserved in each of the cited cases differed from that in the present case. But it was greater in the cited cases—not less. In the *Smith* case, if the contingency occurred, the trust property would then have reverted absolutely to the grantor, and in the *Robinette* case, the grantor would then have had the absolute right by will to dispose of the property of the trust. But in the present case, if the contingency happened, the donor would have had much more limited rights of control. He could merely add additional secondary life beneficiaries and remaindermen to benefit equally with those already named.

Respondent cites and relies upon *Sanford's Estate* v. *Commissioner*, *supra; Burnet* v. *Guggenheim, supra; Doris Bond Sherman*, 41 B. T. A. 898; and *Aldus C. Higgins*, 44 B. T. A. 1123. The decisions in all these cases antedate those in the *Smith* and *Robinette* cases, *supra*, and are readily distinguishable therefrom.

In the *Sanford* case the donor, in 1913, created a trust for the benefit of certain beneficiaries, reserving to himself the power to terminate the trust in whole or in part, or to modify it. In 1919 he surrendered the power to revoke, but reserved the right to modify the trust in any way except by withdrawing principal or income. In August 1924, after the effective date of the gift tax act, the donor renounced his remaining power to modify the trust. The Supreme Court held that the gift became complete and taxable only upon the donor's final renunciation of his power to modify the trust. But in that case the donor's right to exercise the power to modify the trust existed at all times. *It was absolute and not contingent.* It was this very fact upon which the same Court relied in deciding *Smith* v. *Shaughnessy, supra*. This is pointedly evident when the Court in its opinion in the latter case said: "* * * In the *Sanford* case the grantor could, by modification of the trust, extinguish the donee's interest at any instant he chose. * * *"

In the *Robinette* case, which was decided immediately after the *Smith* case, although the Supreme Court did not specifically name the *Sanford* case, it made the same distinction. Thus the Court said:

\* \* \* The instruments created by these grantors purported on their face wholly to divest the grantors of all dominion over the property; it could not be returned to them except because of contingencies beyond their control. \* \* \*

In the present case the donor decedent had no power to modify the trust in any way and never could have except upon the happening of an event beyond his control. *Burnet* v. *Guggenheim, supra*, and *Aldus C. Higgins, supra*, are similarly distinguishable from the present case. Respondent, in effect, admits none of these cases are quite in point because of that very distinction. He says, however, that in *Doris Bond Sherman, supra*, this Court extended the rule of those cases to include contingent rights to modify. In that case we held that the gift there to a trust was incomplete and no gift tax had been incurred when the transfer was made because the donor reserved in the trust instrument the right of adding as beneficiaries after-born children. We there said:

\* \* \* As long as the trustor has such a power and the exercise of it is a possibility, the gifts in trust can not be considered as complete; in the light of the reasoning of the opinion of the Supreme Court in that case [*Sanford*]. Its decision is not based on the probability of the exercise of the power and no distinction is made between a present possibility and a remote or contingent possibility. \* \* \*

This was the same rationale supporting our decision in the *Robinette* case, *supra*, when it was decided by us, the opinion in which appears at 44 B. T. A. 701. Thus we there said:

\* \* \* If, for example, Elise, being thirty and unmarried when her trust was created, should fail to have children and should survive her mother and stepfather, both of whom were substantially older, she would have a power of testamentary appointment. \* \* \* Until children were born, as they were, the settlor still had a possible power of disposition of the remainder, which is one of the most important attributes of ownership. \* \* \*

According to *Sanford's Estate* v. *Commissioner*, 308 U. S. 39, the gift tax is a supplement to the estate tax. A transfer is to be taxed as a gift when it becomes complete and not while the transferor retains substantial control of the property. \* \* \*

The *Sherman* case was not appealed. However, since our decision in the *Robinette* case was reversed by the Third Circuit Court of Appeals and that reversal was affirmed by the Supreme Court, which held that economic control had there been relinquished upon the transfer to the trust, the *Sherman* case, we think, can no longer be followed. We have already decided that, inferentially, on facts comparable to those here, in *John A. Griswold, Jr.*, 3 T. C. 909.

The value, if any, of the contingent rights to modify the decedent donor retained is impossible of appraisal. They can not be measured

in dollars. We have so found upon competent, uncontradicted testimony. That being so, the value of the transfers, for gift tax purposes, when made can not be reduced by any amount as reflecting such contingent rights. Accordingly, the retention of such contingent rights is to be wholly ignored for those purposes. *Robinette* v. *Helvering, supra.*

We therefore conclude that the several transfers of the decedent donor to the trust constituted completed gifts for gift tax purposes when the transfers occurred. *Smith* v. *Shaughnessy, supra; Robinette* v. *Helvering, supra; John A. Griswold, Jr., supra.*[3] It follows that no gift tax arose upon the relinquishment executed by the donor decedent on May 31, 1939. In view of this conclusion, the question as to the efficacy here of section 502 (b), *supra*, becomes moot.

*Decision will be entered under Rule 50.*

---

[3] Gift tax returns for such transfers during years in which the gift tax act was in effect were filed on November 3, 1944, and the tax as there shown to be due was paid, together with interest thereon. (See findings of fact herein.) This payment was in addition to the payment of the amount of the deficiency, the determination of which bases this proceeding, and interest thereon.