### In re HILL'S ESTATE.

### BODINE v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 36, Docket 22024.

United States Court of Appeals Second Circuit.

Argued Nov. 7, 1951.

Decided Jan. 22, 1952.

Montgomery B. Angell and John A. Reed, New York City, for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack and Hilbert P. Zarky, Sp. Assts. to Atty. Gen., Charles Oliphant, Washington, D. C., for respondent.

Before SWAN, Chief Judge, FRANK, Circuit Judge, and COXE, District Judge.

SWAN, Chief Judge.

This appeal involves a deficiency in the federal estate tax assessed against the estate of Walter J. Hill, deceased. Section 811(a) of the Internal Revenue Code, 26 U.S.C.A. § 811(a), requires that there be included in the gross estate of a decedent "the value at the time of his death of all property * * * to the extent of the interest therein of the decedent at the time of his death".[1] On January 2, 1919, Mr. Hill had set up an irrevocable trust for the benefit of his wife, their infant daughter and the daughter's issue, if any survived her. The trust was to terminate upon the death of the last to die of the wife and daughter. During the continuance of the trust, the net income thereof was to be paid in specified amounts to the wife and the daughter and, if the daughter died before the wife, to the daughter's surviving issue, if any, *per stirpes*. The trust income was not to be accumulated and the excess of net income not needed to meet the income payments to the beneficiaries was to be paid to the settlor or his estate. On the happening of certain contingencies, such portions of the trust corpus as the trustees in their discretion should determine to be not needed for the subsequent administration of the trust were to be returned to the settlor or his estate; and if the daughter survived the wife but left no issue surviving, the trust corpus would revert to the settlor or his estate upon the daughter's death. When the settlor died on March 4, 1944, he was survived by his wife aged 56, his daughter aged 35, and a grand-daughter not quite five years old. The value of the trust property at the settlor's death was $786,569.60. The Commissioner valued the decedent's interest in the trust property at $432,250.41. The Tax Court reduced this valuation to $372,270.41.[2]

The taxpayer contends that each of the decedent's three interests in the trust property is so speculative as to be incapable of valuation and therefore nothing whatever should have been included in the gross estate because of the trust. This contention, however, is not seriously pressed with respect to the right to receive annually excess net income during the life of the trust, and obviously could not be supported if it were. During the years 1919 to 1943 inclusive the settlor had received from this source an aggregate of more than $228,000; and for the years 1944 to 1947 inclusive he or his estate received $42,000 additional. At the date of his death the annual income requirements of the trust were $5,000 to the wife and $12,000 to the daughter, while the net income of the trust for 1944 and the three succeeding years has averaged better than $27,000. Actuarially the trust might be expected to continue for about 32 years after the settlor's death. The annual payments are known, the earnings of the trust

1. Sec. 81.13 of Treasury Regulations 105 provides: "It is designed by the foregoing provisions of the Internal Revenue Code that there shall be included in the gross estate all property of the decedent * * * the beneficial ownership of which was in the decedent at the time of his death, except real property situated outside the United States."

2. This figure appears to include a $20 error, as the Tax Court's opinion shows that it intended to decrease the Commissioner's valuation by exactly $60,000.

can be estimated, and the difference will be the surplus returnable to the settlor's estate. Discounted to present worth, that surplus should be included in the taxable estate. The taxpayer estimates that on the assumption that excess income maintains the previous average rate over the remainder of the trust, the value on March 4, 1944 of the right to receive it would be $176,000, using a discount factor of 4 per cent. We do not pass upon the validity of the taxpayer's assumption or discount factor, for the case must be remanded for reasons hereafter explained and the valuation of the right to excess income is for the Tax Court's determination in the first instance. Appellant further argues that in terms of what this right would sell for in the market,[3] a prospective purchaser would require the actuarial value of so uncertain a right to be drastically discounted. This is also a matter for the Tax Court's consideration upon which we express no opinion.

Next to be considered is the decedent's right during the continuance of the trust to have returned to him or his estate upon the happening of certain contingencies such portions of the trust corpus as the trustees in their discretion should determine to be not needed for the subsequent administration of the trust. One of such contingencies occurred when the wife, who had obtained a divorce from the settlor in 1922, remarried in August 1938. Her remarriage reduced the annual income requirements and the trustees returned to the settlor in 1939 securities having a market value of some $128,000. The other contingencies upon which portions of the corpus may be returned to the settlor or his estate are the death of the wife or the daughter during the life of the trust. If the wife dies before the daughter the trustees are to select such portion of the trust property "as shall in their judgment, which shall be final in the premises, be sufficient in amount and character safely to produce such amount of income as shall be reasonably necessary for the subsequent administration of the trust." This portion they shall retain as trust property and the balance they shall deliver to the settlor or his estate. If the daughter dies before the wife the portion retained as trust property must be sufficient in the judgment of the trustees, "which shall be final in the premises" safely to produce "a net income, after the payment of taxes thereon," of $12,000 per year. The taxpayer argues that because the decedent's expectancy of having returned to him or his estate some part of the corpus during the life of the trust depended upon the exercise of discretionary powers conferred upon the trustees, it was not a judicially enforceable right and therefore was not an "interest" in property within the meaning of section 811(a). In this the taxpayer is in error. The case upon which he particularly relies, Commissioner of Internal Revenue v. Irving Trust Co., 2 Cir., 147 F.2d 946, is distinguishable. There the trustees had absolute discretion in the return of corpus, without any standard having been set up to guide them. Here the settlor has directed that they return so much of the corpus as they determine not "reasonably necessary for the subsequent administration of the trust." At the date of death the trust property was worth $786,569.60 and produced an annual income $10,000 in excess of the amount needed to pay the wife and daughter. If the wife shall die before the daughter, as is actuarially probable, the trustees will be relieved of the annual $5,000 payment to her and it seems likely that they would exercise their discretion to return some part of the corpus as they had previously done when her share of the income was reduced by her remarriage.[4] If they refused to do so we cannot doubt, even though the trustees' judgment is declared "final in the premises," that a court of equi-

3. See Estate of Henry v. Commissioner of Internal Revenue, 4 T.C. 423, 445, affirmed as to other issues, 3 Cir., 161 F. 2d 574.

4. We agree with the Tax Court that the settlor intended his daughter's issue to receive $12,000 after the payment of taxes thereon no matter how the trust terminated. The corpus retained at the expected end of the wife's life to provide this amount will determine the corpus receivable by the settlor's estate and will also be relevant in determining the excess income thereafter.

728

ty would intervene to enforce the settlor's mandate that they retain only so much as is reasonably necessary safely to produce the income needed for their subsequent administration. See Dumaine v. Dumaine, 301 Mass. 214, 220, 16 N.E.2d 625, 629, 118 A.L.R. 834; Corkery v. Dorsey, 223 Mass. 97, 101, 111 N.E. 795, 796. The amount of corpus returnable to the decedent's estate under these provisions of the trust is somewhat speculative and admits of no accurate determination, but we cannot doubt that the right had value at the date of the settlor's death. As this court said in Bankers Trust Co. v. Higgins, 2 Cir., 136 F.2d 477, 479, " * * * we should not demand certainty; better a fair guess than the one answer sure to be wrong."[5]

■ The decedent's other interest in the corpus was a contingent reversion upon termination of the trust. This was conditional upon the complete failure of the daughter's issue. Actuarially it is most unlikely that the estate will receive anything under this provision. At the settlor's death there was alive an infant granddaughter who might marry and have children before the trust terminated. Also the daughter aged 35 survived; she was married and the prospect that she might have additional children was not improbable. We agree with the taxpayer's contention that the possibility of enjoyment by the decedent's estate of this contingent reversion was so remote at the date of death that the reversion had no ascertainable value. Commissioner of Internal Revenue v. Cardeza's Estate, 3 Cir., 173 F.2d 19, 23; see also Robinette v. Helvering, 318 U.S. 184, 189, 63 S.Ct. 540, 87 L.Ed. 700.

■ The Tax Court reached its valuation of $372,270.41 in the following manner: From the value of the trust property at decedent's death, $786,569.60, it subtracted $54,319.19, representing the present val-

ue of the wife's life estate and $360,000, representing "an adequate amount to produce $12,000 annually in excess of expenses of the trust as long as it continues and to cover any possible taxes thereafter." Realizing the difficulty of approximating the correct amount of the fund required to produce for the daughter's issue an income of $12,000 free of taxes it evolved the figure $360,000 on the basis of a formula, namely, $12,000 is to $360,000 as $30,000 (the original net income requirements) is to $900,000 (the original corpus of the trust). We think the use of such a formula unsound for several reasons. In the first place the settlor's expectation in 1919 as to the income yield of the corpus is irrelevant to the actual income yield in 1944 and the expectable yield thereafter—factors which the trustees must consider in determining how much to retain as trust corpus to produce the required income for the daughter's issue. The original corpus consisted of bonds bearing $4\frac{1}{4}$ per cent. interest; subsequent changes in the securities held by the trustees had reduced the income yield to about $3\frac{1}{2}$ per cent. at the date of death. Furthermore, the $30,000 net income requirements were not "after taxes," while the $12,000 net income figure was subject to taxes, which in 1944 were vastly higher than the settlor could have anticipated in 1919. Since we cannot approve the formula by which the Tax Court arrived at the $360,000 figure, the case must be remanded for a revaluation of the decedent's interest in the trust property.

■ We agree with the taxpayer that under section 811(a) the proper method of computation in the case of a trust is to determine as of the date of death the values of the decedent's rights in the trust property and to include in the gross estate the sum of such values.

The case is remanded for further proceedings consistent with this opinion.

5. See Helvering v. Safe Deposit & Trust Co., 316 U.S. 56, 66-67, 62 S.Ct. 925, 86 L.Ed. 1266; Palmer v. Conn. Ry. Co.,

311 U.S. 544, 559-561, 61 S.Ct. 379, 85 L.Ed. 336.