W. ARTHUR CULLMAN and CECILIA S. CULLMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cullman v. Commissioner
Docket No. 491-80.
United States Tax Court
T.C. Memo 1981-666; 1981 Tax Ct. Memo LEXIS 77; 42 T.C.M. (CCH) 1691; T.C.M. (RIA) 81666; November 17, 1981. *77 G set up a trust to which she conveyed a $ 290,000 vacation home and retained for herself a one-sixth beneficial interest in the trust. The other five beneficiaries under the trust, each of whom had a one-sixth beneficial interest, were G's husband and their four children. Under trust provisions, restrictions were placed on a beneficiary transferring his interest in the trust. Held: For valuation purposes amount of the gift is the value of the property conveyed by G to the trust less the value of the interest retained by G. Amount of the gift is not determined by considering what a one-sixth beneficial interest was worth to each of the five other beneficiaries. Held further: Evidence does not establish that value of each one-sixth interest in the trust was less than one-sixth of the value of the property held by the trust. *78 Sol Morton Isaac and Elbert R. Nester, for the petitioners. Eugene P. Bogner, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in gift tax due from petitioners for the calendar quarter ending December 31, 1976, as follows: *79 Petitioner
Deficiency
Cecilia S. Cullman
$ 13,594
W. Arthur Cullman
10,875
The only issue for decision is the value on December 29, 1976, of the gifts made by Mrs. Cullman by transferring real property to a trust created on December 29, 1976, and giving to her husband and each of her four children a one-sixth beneficial interest in the trust. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. W. Arthur Cullman and Cecilia S. Cullman are husband and wife, whose legal residence at the time of the filing of the petition herein was in Columbus, Ohio. Petitioners each filed a Federal gift tax return for the quarter ending December 31, 1976 with the Internal Revenue Service Center, Cincinnati, Ohio. On December 29, 1976, petitioner Cecilia S. Cullman created the Hi-Lo Trust. [1] The trustees were petitioner W. Arthur Cullman, W. Arthur Cullman, Jr. (petitioners' son), and Sol Morton Issac (the Cullman family's attorney). By quitclaim deed dated December 29, 1976, petitioner Cecilia S. Cullman conveyed three parcels of realty which she owned to the trustees for the purpose of the trust. *80 The trust property was located in the Walloon Lake area in Charlevoix County, Michigan. The three parcels of realty were contiguous and all of the parcels fronted on the lake. Located on the center parcel was a five-bedroom summer home. As of December 29, 1976, the three parcels were appraised at and had a fair market value of $ 290,000. Under the trust provisions, the beneficial interest in the trust was to be divided into six equal shares. Each petitioner and each of their four children held one of the six equal shares. The trust indenture stated that trust certificates evidencing this ownership of a portion of the beneficial interest were to be issued to each of the six beneficiaries. The entire beneficial interest of the trust was to be divided into 2,400 units; thus, each of the six beneficiaries was to receive a trust certificate in the amount of 400 units which would represent his or her one-sixth share. The trust indenture contained the following provisions restricting the transfer of the trust certificates: 3.6 The transfer shall be registered in a book maintained for that purpose by the Trustees, and a new certificate shall be issued in the place of the one so *81 surrendered, and no holder thereof shall be entitled to recognition as such by the Trustees for any purpose unless the same be so registered, but such registration shall be conclusive as to such ownership. The Trustees are hereby fully authorized to treat the person in whose name such Trust Certificate is registered on the books of the Trustees as the owner thereof for all purposes. 3.7 A Certificate Holder shall have the right to transfer by sale, gift, bequest or otherwise all or any part of his Trust Units to any of the original Certificate Holders identified in Section 3.3 without restriction of any kind. 3.8 In the event of the death of a Certificate Holder, the voluntary transfer from a Certificate Holder to a third Party not covered by Section 3.7, or the transfer of a Certificate Holder's Trust Units by operation of law (such as, but not limited to, a Certificate Holder's trustee in bankruptcy, a purchaser at any creditor's or court sale, the guardian or conservator of an incompetent Certificate Holder, an assignment for the benefit of creditors, or receivorship), the Certificate Holder or his personal representative shall give written notice to the Trustees and other *82 Certificate Holders of such death or pending transfer. In addition to stating the fact of such death or pending transfer the notice shall state: (a) the number of Trust Units proposed to be transferred or the number of Trust Units owned by the deceased Certificate Holder at his death; (b) the name, business and residence address of the proposed transferee, if applicable; and (c) in the case of a voluntary transfer, whether or not the transfer is for a valuable consideration and, if so, the amount of the consideration and other terms of the sale. Within sixty (60) days of the Certificate Holders' receipt of the notice, each Certificate Holder shall have the option to purchase such Trust Units in the same proportion as his individual Trust Units bears to the total Trust Units held by such other Certificate Holders also desiring to purchase the Trust Units and at a price equal to the book value of the offered Trust Units as it stood at the date of the execution of this Indenture, or at the book value of such Trust Units as periodically re-evaluated by the Trustees on the written request of Certificate Holders possessing a majority in interest of the Trust Units. If no Certificate *83 Holder desires to exercise his option to purchase the Trust Units, the Trustees, within seventy (70) days of their receipt of the notice of such death or pending transfer, may exercise an option to purchase the Trust Units for the same price provided the Certificate Holders hereunder. The Certificate Holders or Trustees who exercise any option shall do so by delivering written notice of exercise of the option within the time period provided in this Section. If the options are forfeited or not exercised in compliance with this Section after the expiration of the seventy (70) day option period, the Trust Units shall in the hands of the transferee be subject to the terms of this Trust. 3.9 Notwithstanding the previous Sections in this Article, the Grantor, in her capacity as Certificate Holder hereunder, is absolutely restricted from acquiring more than 33 1/3% interest in the total trust estate. Further, while the beneficial interest in the trust belonged to the certificate holders, the trust indenture and the trust certificates provided that a certificate holder had no legal title in the underlying trust property. The trust was to have a duration of the lifetime of the *84 last survivor among the six original certificate holders, plus 21 years. However, the trust could be terminated at any time by the unanimous consent of all certificate holders. Upon termination the trust estate was to be divided pro rata among certificate holders in accordance with their trust units. The trustees were given extensive powers of management under the trust indenture. They had absolute discretion concerning the management, improvement, and maintenance of the real property. They were empowered to borrow funds for trust purposes by mortgaging or pledging the trust assets. However, before any trust property could be sold or otherwise disposed of, the trustees were required to first obtain the approval of the trust certificate holders owning a majority of the trust units. Also, the trustees could determine on any reasonable basis, consistent with the rights of the certificate holders, how all receipts, disbursements, and capital gains would be apportioned between income and principal. The trust indenture provided that the trustees were to act by a majority vote; however, in matters concerning the day-to-day operation of the trust, the three were permitted to delegate *85 authority to a single trustee. Any successor-trustee would hold the same powers as one of the original trustees. However, before a successor could be appointed to fill a vacancy, his nomination would first have to be approved by the certificate holders possessing two-thirds of the trust units. The Cullman family has continued to the date of the trial of this case in February 1981 to use the summer home property for rest and recreational purposes, in the same manner as they did before the trust was created in December 1976. Each beneficiary is assessed for a share of the expenses incurred with respect to the property and the amount of each individual's assessment is based on his use of the property. Up to the present, the property has not been rented out to other than members of the Cullman family and has produced no income aside from the assessments paid by members of the Cullman family. On her gift tax return for the quarter ending December 31, 1976, petitioner Cecilia S. Cullman reported the five gifts, each of a one-sixth beneficial interest in the Hi-Lo Trust, which she had made to her husband and her four children. Mrs. Cullman, pursuant to the gift-splitting provisions *86 of section 2513, treated the four gifts to her children as being made one-half by her and the other half by her husband. Petitioner on her return reported a value of $ 120,833 for the total gifts made by her, which was arrived at by assigning a value of $ 24,167 (a pro rata share of the value of the underlying trust property discounted by 50 percent) to the gift of each one-sixth beneficial interest in the trust. From the total gifts shown of $ 120,833, Mrs. Cullman deducted on line (b) of Schedule A of her return $ 48,333 as one-half of the value of the one-sixth interest in the trust given to each of her four children as "attributable to spouse." The following statement was made on the return with respect to the valuation of the gifts: The Hi-Lo Trust sole asset consists of certain real property appraised at $ 290,000. Shares of beneficial interest in the trust were divided into units representing a 1/2, 400 ownership interest. Shares of beneficial interest representing approximately 83% ownership interest were distributed to five different donees. Due to the restrictions on disposition of these shares and the obvious lack of marketability attributed thereto, a 50% discount *87 is hereby claimed on the appraised value of said units. Petitioner W. Arthur Cullman on his gift tax return for the quarter ending December 31, 1976, reported $ 48,333 as "gifts of spouse to be included (from line b of spouse's return)." Respondent in his notice of deficiency to Mrs. Cullman used a total valuation of her gifts of $ 241,666 or $ 48,333.20 per one-sixth interest in the trust. In accordance with this determination, respondent determined the amount attributable to spouse to be $ 96,666.40. In his notice of deficiency to Mr. Cullman, respondent increased the value of the gifts reported by him by $ 48,333 with the explanation that this was additional value of gifts of spouse to be included. OPINION Section 2512(a) provides that, if a gift is made in property, the value of the property at the date of the gift shall be considered the amount of the gift. The standard of valuation is the fair market value of the property, which is defined as the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion *88 to buy or to sell, and both having reasonable knowledge of the relevant facts. Section 25.2512-1, Gift Tax Regs. Petitioners take the position that Mrs. Cullman gave to her husband and each of her four children restricted trust certificates of 400 units representing a one-sixth interest in the trust. Petitioners contend that each certificate had a fair market value well below its pro rata portion of the value of the property which formed the corpus of the trust. Although a discount was used by petitioners in the gift tax returns of 50 percent of the pro rata value of the property represented by each one-sixth interest, they argue that in fact because of each interest being a minority beneficial interest and the restrictions placed on the trust certificates, the actual value might be well below this 50 percent discount. Respondent argues primarily that, under the factual circumstances here present, the value which should be subject to gift tax is the agreed $ 290,000 value of the property which was contributed to the trust less the one-sixth interest retained by Mrs. Cullman or $ 241,666 for the entire five gifts. In addition, respondent contends that petitioners have not carried *89 their burden of showing that the value of each one-sixth interest was less than its pro rata share of the value of the property which formed the corpus of the trust and therefore have not overcome the presumptive correctness of his determination of a $ 241,666 value of the gifts made by Mrs. Cullman in the last quarter of 1976.
Section 25.2511-1(e), Gift Tax Regs., [2] provides that when a donor makes a gift of less than his entire interest in property, the gift tax is applicable to the interest transferred. If the donor's interest is not susceptible of measurement on the basis of generally accepted valuation principles, the gift tax is applicable to the entire value of the property subject to the gift. Under the regulation the proper approach to the value of the gifts in situations where the donor has retained an interest in the gifted property is to determine the value by subtracting the fair market value of the donor's retained interest from the fair market value of the entire property given. In other words, the donor has made a gift of the full value of the property less the value of the *90 interest he has retained. This approach was taken by the Supreme Court with respect to a gift in trust in Robinette v. Helvering, 318 U.S. 184, 188-189 (1943); Robinette v. Helvering involved an irrevocable gift in trust made *91 by a woman contemplating marriage. The trust provided that the donor receive the income for life and upon her death her mother and stepfather were to have a life interest in the income with the remainder to go to the donor's issue upon their reaching the age of 21 and in default of issue to whomever the last surviving life tenant should appoint by will. The position of the taxpayer in that case was that no taxable gift had been made by the donor of the remainder interest in the trust. In holding that even though there were no donees of the remainder interest in existence at the time of the creation of the trust, the transfers were completed gifts, the Court stated: The gift tax law * * * imposes a tax "upon the transfer… of property by gift." And Treasury Regulation 79, art. 3, provides that "The tax is a primary and personal liability of the donor, is an excise upon his act of making the transfer, is measured by the value of the property passing from the donor, and attaches regardless of the fact that the identity of the donee may not then be known or ascertainable." We are asked to strike down this regulation as being invalid because inconsistent with the statute. We do not *92 think it is. As pointed out in the Smith case, the effort of Congress was to reach every kind and type of transfer by gift. The statute "is aimed at transfers of the title that have the quality of a gift." Burnet v. Guggenheim, 288 U.S. 280, 286, * * *. The instruments created by these grantors purported on their fact wholly to divest the grantors of all dominion over the property * * * [318 U.S. at 186-187] Her, unlike the Smith case, the government does not concede that the reversionary interest of the petitioner should be deducted from the total value. In the Smith case, the grantor had a reversionary interest which depended only upon his surviving his wife, and the government conceded that the value was therefore capable of ascertainment by recognized actuarial methods. In this case, however, the reversionary interest of the grantor depends not alone upon the possibility of survivorship but also upon the death of the daughter without issue who should reach the age of 21 years. * * * It may be true, as the petitioners argue that trust instruments such as these before us frequently create "a complex aggregate of rights, privileges, *93 powers and immunities and that in certain instances all these rights, privileges, powers and immunities are not transferred or released simultaneously." But before one who gives this property away by this method is entitled to deduction from his gift tax on the basis that he had retained some of these complex strands it is necessary that he at least establish the possibility of approximating what value he holds. * * * [318 U.S. at 188] Following the method used in the Robinette case and that suggested by the regulation, we conclude that petitioner made a gift of the entire property that she transferred to the trust reduced by her retained interest. The value of the gifts so determined is at least the $ 241,666 amount determined by respondent. Petitioner, in arguing against respondent's contention that the entire value of the real property donated by petitioner to the trust less her retained interest in the trust is the valuation that should be used, points out that respondent did not deny her claimed five annual exclusions. It has long been settled that where a *94 gift is made in trust for more than one beneficiary, if the gift is not of a future interest in the property, the donor is entitled to an annual exclusion for each beneficiary of the trust. Helvering v. Hutchings, 312 U.S. 393 (1941). Section 2503(b). The Hutchings case, however, did not deal with valuation of the gifts made. The holding in that case merely concluded that the term "person" as used in the annual exclusion statute referred to the individual beneficiary of the trust and not to the trust itself although a trust is considered as a "person" in the context of other provisions of the revenue laws. The basis of the conclusion was the reasonable interpretation of the annual exclusion statute to perfect the purpose for which it was intended. It is clear from the opinion as a whole that it in no way dealt with valuation. However, this is made unmistakably clear by the concluding paragraph of the opinion in which the Court stated (at 398): It is unnecessary to consider here the question whether a gift upon trust for impersonal, public or charitable purposes where there are no designated or ascertainable first beneficiaries is a gift to the trust entitled *95 to a single $ 5,000 deduction. * * * In our view, the allowance of the annual exclusion for each trust beneficiary does not indicate the value of the gift made when the property is transferred to the trust. Under the circumstances here present, it is clear that "the value of the property passing from the donor" is $ 290,000 less the value of Mrs. Cullman's retained interest in the trust. The trust was set up and provision made for the issuance of certificates representing one-sixth interest to Mrs. Cullman, each of her four children, and to her husband simultaneously with the transfer of the property to the trust. Mrs. Cullman parted with all but a one-sixth interest in property with a stipulated value of $ 290,000 at the time this transaction was consummated. As the Supreme Court recognized in the Robinette case and as we have recognized on a number of occasions, it is the transfer of the control over the beneficial enjoyment of property that is the event giving rise to the gift tax and it is the property transferred by gift that is to be valued. In Lockard v. Commissioner, 7 T.C. 1151, 1154 (1946), *96 affd. 166 F.2d 409 (1st Cir. 1948), we stated: In the Smith case [Smith v. Shaughnessy, 318 U.S. 176] the Court said that the "essence of a gift by trust is the abandonment of control over the property put in trust." Here the petitioner, by her transfer in trust, abandoned all control over and irrevocably committed the corpus, to the extent of $ 3,000 a year, to invasion for the benefit of her husband, if the need therefor should arise. * * * In the instant case Mrs. Cullman abandoned the control over the entire real property of a value of $ 290,000 which was put into the trust. Whether the restrictions placed on the certificates affected the value of those certificates in the hands of the donees is not relevant in determining the value of the property that Mrs. Cullman transferred by gift. See Griswold v. Commissioner, 3 T.C. 909 (1944), in which we held that, because of a provision in the trust permitting the trustees in their discretion to distribute the corpus of the trust to the life beneficiary, the entire value of the property transferred to the trust was subject to the gift tax even though at the death of the life *97 beneficiary the settlor was to take the remainder. The conclusion we reach, that the entire value of the real property contributed to the trust less the value of Mrs. Cullman's retained one-sixth interest in the trust is subject to gift tax, is in accordance with the requirements of section 25.2511-2(a), Gift Tax Regs., which provides: Sec. 25.2511-2 Cessation of donor's dominion and control. (a) The gift tax is not imposed upon the receipt of the property by the donee, nor is it necessarily determined by the measure of enrichment resulting to the donee from the transfer, nor is it conditioned upon ability to identify the donee at the time of the transfer. On the contrary, the tax is a primary and personal liability of the donor, is an excise upon his act of making the transfer, is measured by the value of the property passing from the donor, and attaches regardless of the fact that the identity of the donee may not then be known or ascertainable. [Emphasis supplied.] Clearly the value of the property passing by gift from the donor is the $ 241,666 as determined by respondent. *98 Petitioner's contention is in effect a contention that we should determine the fair market value of the gifts by measuring the enrichment resulting to the donees from the transfer. This is contrary to the provisions of the regulation. On the basis of the law and regulations, we sustain respondent's determination. No further discussion is really necessary in light of our holding above. However, because of the manner in which the case was presented and argued by the parties, we consider it appropriate to discuss the issue of whether petitioners have shown the fair market value of the certificates representing a one-sixth interest which each donee received. Since respondent determined a value of $ 48,333.20 for each one-sixth interest, it is incumbent upon petitioners to show error in this determination. Rule 142(a), Tax Court Rules of Practice and Procedure. In our view, petitioners have failed to show such error. In fact, petitioners' argument is in substance that we should conclude as a matter of law that a minority interest restricted as to disposition should always be valued at a discount from its pro rata share of the value of the underlying property. Whether a discount *99 is appropriate for a minority stock interest in a corporation or for an undivided interest in property is a factual question to be determined in each case. Likewise, whether the certificates in the trust here involved should be valued at a discount from their pro rata share of the underlying trust corpus is a fact question. The only evidence offered by petitioners in support of their position that a 50 percent discount should be allowed from the underlying value of the property in valuing the trust certificates was the testimony of petitioners' son, W. Arthur Cullman, Jr. This witness was a stockbroker by profession but his experience with respect to trust certificates had been minimal and he never had an occasion to value certificates in a trust that held vacation or recreational-type property. His experience with discounts for minority interests, though minimal, was in areas involving underlying property other than real estate. The witness merely stated an unsupported opinion with no detail or discussion or explanation of the process by which he arrived at his conclusion. In fact his testimony in substance amounted to a statement that we should accept as a matter of law that *100 restrictions, such as were placed on the trust certificates here involved, would cause those certificates to be subject to a 50 percent discount. Even a restrictive agreement which respect to resale of corporate stock at a predetermined price to other stockholders is not considered as a matter of law to determine the fair market value of the stock for gift tax purposes. Rather, the restrictions are merely factors to be considered. Berzon v. Commissioner, 63 T.C. 601, 612-613, affd. 534 F.2d 532 (2d Cir. 1976). It appears from the trust agreement, which we have quoted in some detail in our findings, that as of December 29, 1976, the price at which the other certificate holders would be entitled to purchase a certificate would not be less than the pro rata share of book value attributable to the certificate offered, which, of course, at that time would be the pro rata portion of the $ 290,000 value of the underlying property. This certainly is no support for petitioners' contention of a discount of the magnitude of 50 percent and casts grave doubts on any opinion given by petitioners' only expert witness. Also, it appears that there was no restriction *101 on one certificate holder selling his interest to another original certificate holder at whatever price they might negotiate. Petitioners' expert witness did not discuss how this fact affected his opinion. Nor did petitioners' expert witness give consideration to the provision of the trust which permitted a reappraisal of the book value of the certificates. Certainly, a discount does not necessarily result from the fact that an interest is a fractional interest in a trust estate. That a discount should be allowed is a matter which must be proved, just as it must be proved that an undivided interest in real estate might have a fair market value of less than its proportionate share of the value of the property. Estate of Barclay v. Commissioner, 2 B.T.A. 696 (1925); Campanari v. Commissioner, 5 T.C. 488 (1945). [3]
Considering the testimony of petitioners' expert as a whole, we conclude that it is without foundation and we attach no weight to his testimony. See Estate of Fitts v. Commissioner, 237 F.2d 729, 732-733 (8th Cir, 1956), affg. a Memorandum *102 Opinion of this Court; Estate of Williams v. Commissioner, 256 F.2d 217, 218-219 (9th Cir. 1958), affg. a Memorandum Opinion of this Court. We conclude on the basis of the record as a whole that petitioners have failed to show error in respondent's determination. Decision will be entered for the respondent. Footnotes
1. The trust clearly came into being on December 29, 1976, although the trust indenture setting forth in detail the provisions of the trust was not formally executed by petitioner until December 31, 1976. Petitioner on December 29 executed a quitclaim deed of the realty which constituted the trust corpus to the trustees.↩
2. Sec. 25.2511-1(e), Gift Tax Regs., provides as follows: If a donor transfers by gift less than his entire interest in property, the gift tax is applicable to the interest transferred. The tax is applicable, for example, to the transfer of an undivided half interest in property, or to the transfer of a life estate when the grantor retains the remainder interest, or vice versa. However, if the donor's retained interest is not susceptible of measurement on the basis of generally accepted valuation principles, the gift tax is applicable to the entire value of the property subject to the gift. Thus, if a donor, aged 65 years, transfers a life estate in property to A, aged 25 years, with remainder to A's issue, or in default of issue, with reversion to the donor, the gift tax will normally be applicable to the entire value of the property.↩
3. See also Iacono v. Commissioner, T.C. Memo. 1980-520↩.